Jose Franco ARMENDARIZ, Appellant,

v.

The STATE of Texas.

No. 0070–02.

Court of Criminal Appeals of Texas, En banc.

Dec. 10, 2003.

9. TEX. PENAL CODE § 19.04.

10. *Id.,* § 6.03(c).

H. Thomas Hirsch, Odessa, for Appellant.

Betty Marshall, Assistant State Attorney, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The court of appeals held that the trial court erred in denying appellant's motion to suppress. *Armendariz v. State,* 63 S.W.3d 572, 578 (Tex.App.-El Paso 2001). We reverse.

### The Relevant Facts

An Ector County grand jury indicted appellant on one count of possession of a controlled substance, namely cocaine. See Tex. Health & Safety Code § 481.115(d). Appellant later filed a motion to suppress the cocaine in question, and the trial court held an evidentiary hearing on the motion. The evidence adduced at the hearing, viewed in the light most favorable to the trial court's later ruling,[1] established the following:

On June 10, 1999, the Odessa Police Department received an anonymous tip that appellant would soon transport a quantity of cocaine from his residence on Witcher Street to the "La Bodega" con-

---

1. An appellate court reviewing a trial court's ruling on a motion to suppress must view the evidence in the light most favorable to the trial court's ruling. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000).

venience store on West 42nd Street. Both appellant's residence and the convenience store were located outside the Odessa city limits but inside Ector County. Odessa Police Officer Jordan Medrano asked Ector County Deputy Sheriff Keith Paquette to assist in the investigation of appellant, and Paquette agreed to do so. Medrano and Paquette, both undercover in civilian clothes and in unmarked vehicles, located appellant's residence, and Medrano began surveillance of it. Paquette remained in the area, in his unmarked vehicle, ready to assist. Several other Odessa police officers, in marked police vehicles, were also in the area, ready to assist. All of these peace officers maintained continuous radio contact. At approximately 4:30 p.m., Medrano observed appellant drive away from his residence in a green Lincoln automobile. Medrano radioed this information to the other police officers in the area and to Paquette. Moments later, Paquette spotted appellant's vehicle, followed it briefly, and observed appellant commit a traffic offense, namely passing on the shoulder. Since Paquette was undercover—and, therefore, not in a position to initiate a traffic stop of appellant—he radioed his observations to the Odessa police officers in the area and instructed them to stop appellant's vehicle. Two of the Odessa police officers then stopped appellant's vehicle at a point inside Ector County but outside the Odessa city limits. They asked for appellant's consent to search his vehicle, and he gave that consent voluntarily. The officers then searched appellant's vehicle and found two small bundles of co-

caine. Paquette arrived at the scene a few minutes later.

At the close of the evidence at the suppression hearing, appellant made two arguments as to why the cocaine in question should be suppressed. His first argument, grounded in the Fourth Amendment to the United States Constitution, was that the cocaine was the fruit of an unreasonable seizure and search conducted without probable cause.[2] His second argument, grounded in Article 14.03(d) of the Texas Code of Criminal Procedure,[3] was that the cocaine was the fruit of an illegal traffic stop carried out outside the Odessa police officers' geographic jurisdiction.

The trial court rejected both of appellant's arguments and denied his motion to suppress. More specifically, the trial court concluded that the stop and search of appellant's vehicle were lawful under both the Fourth Amendment and state law because (1) at the time of the stop, the Odessa police officers had probable cause to believe that appellant was then committing the felony offense of possession of cocaine, (2) the officers obtained appellant's consent to search, and (3) the officers "had the participation by [the] sheriff's deputy outside the city limits."

Later, after a bench trial, the trial court found appellant guilty and assessed his punishment at imprisonment for five years and restitution in the amount of $140.

On direct appeal, appellant reiterated the two arguments he made in the trial court. The Eighth Court of Appeals ac-

**2.** The Fourth Amendment's prohibition of unreasonable searches and seizures was made applicable to state officials by the Due Process Clause of the Fourteenth Amendment. *Wolf v. Colorado,* 338 U.S. 25, 27–28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

**3.** Article 14.03(d) provides, in relevant part:

A peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Title 9, Chapter 42, Penal Code [prohibiting disorderly conduct], a breach of the peace, or an offense under Section 49.02, Penal Code [prohibiting public intoxication].

cepted both of appellant's arguments, reversed the judgment of the trial court, and remanded the case for further proceedings. *Armendariz v. State*, 63 S.W.3d at 578. We later granted the State's petition for discretionary review to determine whether the court of appeals erred. See Tex.R.App. Proc. 66.3(b) & (c).

### Analysis

The court of appeals was obligated to uphold the trial court's ruling on appellant's motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000). That rule holds true even if the trial court gave the wrong reason for its ruling. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). Our task, then, is to determine whether the trial court could have reasonably denied appellant's motion to suppress given the record evidence and given the applicable federal and state law.

■■■ We turn first to appellant's Fourth Amendment claim. As we noted previously, appellant argued in the trial court that the cocaine found in his vehicle should be suppressed, under the Fourth Amendment, as the fruit of an unreasonable seizure and search conducted without probable cause. Given the record evidence, however, the trial court could have reasonably concluded that the seizure and search of appellant's vehicle did not violate the Fourth Amendment. Once Deputy Sheriff Paquette observed appellant commit a traffic offense, he radioed that information to the Odessa police officers, and that information gave those officers probable cause to stop appellant's vehicle.[4] Once the officers stopped appellant's vehicle, they asked for and received his voluntary consent to search. Since the search followed a legitimate traffic stop and was carried out with appellant's consent, it was reasonable under the Fourth Amendment. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■■■ We turn next to appellant's state law claim. As we noted previously, appellant argued in the trial court that the cocaine should be suppressed, under Article 14.03(d), as the fruit of an illegal traffic stop carried out outside the Odessa police officers' geographic jurisdiction. Given the record evidence, however, the trial court could have reasonably concluded that the traffic stop did not violate state law. That is, the trial court could have reasonably concluded that the traffic stop was lawful under Article 14.01(b)[5] as interpreted by this Court in *Astran v. State*, 799 S.W.2d 761 (Tex.Crim.App.1990).

In *Astran*, we faced a fact pattern analogous to the instant one:

Dallas officers, uniformed and undercover, were working in a combined effort to arrest drug offenders on the date of [Romaldo Astran's] arrest. Officer Wilson was part of the team and was working undercover making street buys of illegal drugs. Wilson bought twenty dollars' worth of heroin from [Astran] and drove away from the scene of the

---

4. Under the Fourth Amendment, probable cause to conduct a warrantless seizure exists when police have, at the moment of the seizure, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense has been or is being committed by the person seized. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

5. Article 14.01(b) provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

sale. He immediately radioed uniformed Officer Black to make the arrest. Wilson gave a detailed description of [Astran], which included [his] height, weight, and location. Wilson specifically told Black that [Astran] was wearing a tee-shirt which spelled the words "Jesus Christ." Black found appellant in two minutes and arrested him. Wilson was parked two blocks away during the arrest and maintained radio contact with Black throughout the sighting and arrest. Within thirty minutes of the arrest Wilson identified appellant at the police station as the person who sold the drugs. During the arrest, Black found a small matchbox with five capsules of heroin on [Astran's] person which [Astran] sought to have suppressed [as the fruit of an illegal arrest and search].

*Id.* at 762. On those facts, we held that Astran's arrest was lawful under Article 14.01(b) because "Wilson's participation in and awareness of the circumstances of the arrest made him just as much a participant in [Astran's] arrest as if he had seized [Astran] himself." *Id.* at 764 (internal quotation marks omitted). In other words, Astran's arrest was lawful under Article 14.01(b) because Wilson himself, in effect, arrested Astran.

Given Article 14.01(b), as interpreted in *Astran*, and given the record evidence in this case, the trial court here could have reasonably concluded that appellant's arrest was lawful because Paquette himself, in effect, arrested appellant and Paquette was clearly acting within his geographic jurisdiction, which was Ector County. The record evidence shows that Paquette observed appellant commit a traffic offense and that Paquette then radioed that information to the Odessa police officers and instructed them to stop appellant's vehicle. The record evidence also shows that Pa-

quette remained in continuous radio contact with the Odessa police officers, and that he arrived at the scene of the arrest just a few minutes after appellant's vehicle was stopped. Given those facts, the trial court could have reasonably concluded that Paquette's participation in and awareness of the circumstances of appellant's arrest made him just as much a participant in the arrest as if he had seized appellant himself. In light of such an *Astran* analysis, the geographic jurisdiction of the Odessa police officers was irrelevant.

The trial court's ruling denying appellant's motion to suppress was supported by the record and was correct under a theory of law applicable to the case. Therefore, the court of appeals was obligated to uphold the trial court's ruling and erred in failing to do so.

We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

WOMACK, J., also filed a concurring opinion.

MEYERS, J., filed a dissenting opinion, in which JOHNSON, J., joined.

WOMACK, J., filed a concurring opinion.

While I join the Court's opinion, I wish to point out a more significant question on which we granted review, but which the Court's opinion does not reach: the authority of municipal police officers to arrest outside their cities.

This court confronted the question in 1987 in *Angel v. State.*[1] Police officers of the City of Tomball stopped Angel outside the city limits on August 29, 1983. They learned that warrants for his arrest were outstanding, and one of them saw evidence

---

1. 740 S.W.2d 727 (Tex.Cr.App.1987).

that made him think that Angel's vehicle had been "hot wired," so they arrested him. At his trial for felony theft, he objected to the evidence on the ground that it was illegally seized by officers who had no authority to stop or arrest him "outside the jurisdiction of authority."[2] The trial court overruled the objection. The court of appeals rejected his argument and affirmed the judgment of conviction.

In this court an opinion by Judge Campbell announced the judgment that affirmed the judgments of the courts below. After setting out the facts and the procedural history in Parts I and II, the opinion addressed two questions. In Part III, the opinion held that the State had "waived" the right to challenge Angel's standing to complain of the seizures by not raising the question in the court of appeals.[3] That part of the opinion was joined by only one other judge,[4] with a third judge concurring in the result.[5]

In Part IV, Judge Campbell's opinion addressed the authority of the Tomball officers to arrest outside the city limits. The opinion looked to Articles 998 and 999 of Vernon's Texas Civil Statutes Annotated. Article 998 said that the city or town council in any city or town "incorporated under the provisions of this title" (not otherwise identified in the opinion) may provide for the appointment of police officers, who "*shall have like powers, rights, au-*

*thority and jurisdiction as are by said title vested in city marshals.*"[6] In turn, Article 999 said of the city marshal, "*In the prevention and suppression of crime and arrest of offenders, he shall have, possess and execute like power, authority and jurisdiction as the sheriff.*"[7] The opinion noted that a sheriff was "a conservator of the peace *in his county* .... Art. 2.17, V.A.C.C.P. (1977). A sheriff's jurisdiction, therefore, is county-wide. Because a city police officer's jurisdiction for arresting offenders parallels a sheriff's jurisdiction, see Arts. 998 & 999, supra, it appears that a city police officer's jurisdiction is county-wide."[8] The opinion held that those articles "grant city marshals and city police officers county-wide jurisdiction to arrest offenders."[9] It also said that prior decisions of the court, which were to the contrary, were overruled.[10]

I do not believe that *Angel* can be relied on to decide the question of the authority of police officers to arrest outside their cities today. For one thing, Judge Campbell's opinion on that question was not joined by any other member of the court. One judge was recorded simply as "concurs in result."[11] The other three members of the court who joined the judgment of affirmance dissented from Part III of Judge Campbell's opinion, and said, "Otherwise, [they] concur in the result."[12]

2. *Id.,* at 728–29.

3. *Id.,* at 730.

4. *See id.,* at 736 ("DUNCAN, J., joins in part III ...").

5. *See id.,* at 748 (dissenting opinion of Miller, J.) ("I concur in the result reached as to the standing issue ...").

6. *Id.,* at 732, n. 13 (emphasis in original).

7. *Ibid.* (emphasis in original).

8. *Id.,* at 735 (emphasis in original).

9. *Id.,* at 736.

10. *Ibid.*

11. *See Angel,* 740 S.W.2d, at 736 ("WHITE, J., concurs in result").

12. *Angel,* 740 S.W.2d at 736, 739 (concurring and dissenting opinion of McCormick, J., joined by Onion, P.J., and Davis, J.).

Four judges dissented.[13]

Plurality opinions from this court were common before 1997,[14] and the lead opinions did not inform the reader whether they were opinions of the court. In fact, the reader might have to leaf through several opinions, looking for the various places in which the individual judges' decisions might be recorded. Readers and publishers might notice that a lead opinion was not an opinion of the court, but they might not. In the *Angel* case, for example, the syllabus and headnotes of the West Publishing Company's report did not mention that the lead opinion was that of Judge Campbell with one judge concurring as to Part III, and four judges concurring in the result as to Part IV.[15]

As we have said before, plurality opinions have limited (or even no) precedential value.[16] When an opinion that announced the judgment of the court was not joined by any other member of the court, we have been free to reexamine its reasoning and to say whether it can be regarded as correct.[17] We granted review to do so in this case.[18] I think that Judge Campbell's opinion did not address the statutes cor-rectly, and the amendment of the controlling statutes in 1995 has made its persuasive authority even less.

Judge Campbell based his opinion in *Angel* on language in two articles of the civil statutes. The basic flaw in this approach is that, as a dissenting opinion pointed out, it did not take into account whether those statutes applied to the kind of municipality in question.[19]

There are three species of municipal corporations in Texas, categorized according to the manner of their creation: general-law cities (of which there are three types—A, B, and C), home-rule cities, and cities chartered by special legislation.[20] The various statutes that grant their authorities were codified in the Local Government Code in 1987.[21]

When the Tomball officers arrested Angel in 1983, Articles 998 and 999 of Vernon's Civil Statutes (the specific statutes on which Judge Campbell's opinion in *Angel* relied) were in Title 28, Chapter 1 of the Civil Statutes. The "Articles of this chapter have application only to general

---

**13.** *See Angel*, 740 S.W.2d, at 736 ("Teague, J., dissents. Duncan, J., joins in part III and dissents to part IV"), 739 (dissenting opinion of Clinton, J., joined by Teague, J.), 748 (opinion of Miller, J., concurring in result reached concerning the standing issue, and dissenting to the jurisdiction holding).

**14.** Of the cases in which this court ordered its opinions published in State Fiscal Year 1996, nineteen per cent were decided without an opinion of the court. Since 1997 the number has been less than one per cent.

**15.** *See Angel*, 740 S.W.2d, at 727.

**16.** *E.g., Cooper v. State*, 67 S.W.3d 221, 224 (Tex.Cr.App.2002).

**17.** *See Ex parte Anderer*, 61 S.W.3d 398, 402–05 (Tex.Cr.App.2001).

**18.** "The continued viability of *Angel* is squarely presented in *Armendariz v. State*, 02–0070, which is currently pending in this Court." *Yeager v. State*, 104 S.W.3d 103, 105 n. 2 (Tex.Cr.App.2003).

**19.** *See Angel*, 740 S.W.2d, at 739 (Clinton, J., dissenting).

**20.** David B. Brooks, 22 Texas Practice—Municipal Law & Practice § 3.03 (2d ed.1999). *See* Tex. Local Gov't Code, ch. 5:

"Subchapter A. Types of Municipalities
"Section
"5.001. Type A General–Law Municipality.
"5.002. Type B General–Law Municipality.
"5.003. Type B General–Law Municipality.
"5.004. Home–Rule Municipality.
"5.005. Special–Law Municipality."

**21.** Act of May 21, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 707.

law cities." [22] Articles 998 and 999 did not apply to home-rule or special-law municipalities.

Home-rule cities were authorized, by an article in Chapter 13, "To provide for police and fire departments." [23]

Home-rule cities have the mere statutory authority to "provide for a police department." [24] Whatever extraterritorial authority that may be granted to [home-rule-city] officers pursuant to a [home-rule-city] charter cannot, of course, be in conflict with the general laws of the state which conclude that a [home-rule-city] policeman, as a peace officer, has the duty "to preserve the peace within his jurisdiction." [25] There has never been a statute comparable to that applicable to a Type A general-law municipalities that gives officers the same county wide authority as sheriffs. [26]

It may be added that a home-rule municipality also may police certain areas owned by and located outside the municipality. [27] In a Type B general-law municipality, the marshal has the same power within the municipality that a constable has within a precinct. [28] In a Type C municipality, the governing body may appoint police officers

that it considers necessary and may define the duties of the officers. [29]

Insofar as Judge Campbell's opinion said that Articles 998 and 999 could authorize officers of any kind of municipality to arrest outside the limits of their cities, it was simply incorrect. Some courts of appeals have recognized that the holding of his opinion cannot be applied to officers of all types of cities. [30]

A second reason why *Angel* cannot be authoritative today is that Articles 998 and 999 have changed. They were repealed, effective September 1, 1987, [31] and replaced by sections 341.001 and 341.021 of the Local Government Code. Those sections apply only to the police force and the marshal, respectively, of a Type A general-law municipality. [32] In 1995, those sections were amended to give the officers of those cities the same powers and jurisdiction that the Code of Criminal Procedure gives peace officers. The amending act said:

Section 341.001(e), Local Government Code, is amended to read as follows:

(e) A police officer has:

(1) the powers, rights, *duties*, and jurisdiction *granted to or imposed on a peace officer by the Code of Criminal*

---

**22.** Trueman O'Quinn, *History, Status, and Function of Cities, Towns and Villages,* in 2A VERNON'S ANNOTATED REVISED CIVIL STATUTES OF THE STATE OF TEXAS XIII, XXIX (1963).

**23.** VERNON'S ANNOTATED CIVIL STATUTES art. 1175(27) (1963).

**24.** [TEX. LOCAL GOV'T CODE] § 341.003.

**25.** [TEX.CODE CRIM. PROC. art.] 2.13.

**26.** DAVID B. BROOKS, 23 TEXAS PRACTICE-MUNICIPAL LAW & PRACTICE § 14.09 (2d ed.1999) (footnotes in original, renumbered).

**27.** TEX. LOCAL GOV'T CODE § 341.903 ("parks and grounds, lakes and land contiguous ..., speedways and boulevards").

**28.** *Id.,* § 341.022(a).

**29.** *Id.,* § 341.002.

**30.** *See Yeager v. State,* 23 S.W.3d 566, 570 n. 3 (Tex.Ct.App.-Waco 2000), *reversed on other grounds,* 104 S.W.3d 103 (Tex.Cr.App.2003); *Reichaert v. State,* 830 S.W.2d 348 (Tex.App.-San Antonio 1992, pet. ref'd).

**31.** Act of May 21, 1987, § 49(1), 1987 Tex. Gen. Laws at 1306 ("The following laws are repealed: (1) the following articles and acts, as compiled in Vernon's Texas Civil Statutes: ... 998 ... 999 ...").

**32.** BROOKS, *supra* note 26, § 14.09

*Procedure* [of a marshal of a Type A general-law municipality]; and

(2) other powers and duties prescribed by the governing body.[33]

Section 341.021(e), Local Government Code, is amended to read as follows: (e) The marshal has the same power and jurisdiction *as a peace officer under the Code of Criminal Procedure* [the county sheriff] to execute warrants, to prevent and suppress crime, and to arrest offenders. The marshal has other powers, not inconsistent with state law, that the governing body confers by ordinance.[34]

The act had one other section, which added subsection (g) to article 14.03 of the Code of Criminal Procedure:

(g) A peace officer who is listed in Subdivision (1), (2), (3), or (4), Article 2.12, is licensed under Chapter 415, Government Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer who is outside the officer's jurisdiction may arrest a person for a violation of the Uniform Act Regulating Traffic on Highways (Article 67091d, Vernon's Texas Civil Statutes) only if the officer is listed in Subdivision (4), Article 2.12. A peace officer making an arrest under this subsection shall as soon as practicable after making the arrest notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06.[35]

The peace officers who were listed in Article 2.12(1)—(4) were sheriffs and their deputies, constables and deputy constables, marshals or police officers of an incorporated city or town or village, and rangers and officers of the Department of Public Safety. Subsection (g) was amended in 1999 to add a fifth class of officers (the investigators of the district attorneys', criminal district attorneys', and county attorneys' offices) and to change the reference from "Uniform Act [etc.]" to "Subtitle C, Title 7, Transportation Code."[36] Other, minor amendments have been made.

Taken as a whole, the 1995 act (as amended in 1999) affected the law in four ways. (1) It gave five classes of peace officers authority to arrest outside their jurisdictions for offenses, other than certain traffic offenses, that were committed within the officer's presence or view. (2) By negative implication, it denied to all other classes of peace officers authority to arrest outside their jurisdictions for offenses that were committed within the officer's presence or view. (3) It gave only rangers and officers of the Department of Public Safety authority to arrest for certain traffic offenses if they were outside the officer's jurisdiction. (4) It gave the officers of Class A general-law municipalities the same power and authority as peace officers are generally given under the Code of Criminal Procedure.

When this statute, as it has been amended, is considered together with the provisions of the Local Government Code, today's answer to the question in *Angel,* and the question in this appeal of which we granted review but that we have not addressed, would seem to be that a peace

33. Act of June 16, 1995, 74th Leg., R.S., ch. 829, § 2, 1995 Tex. Gen. Laws 4213, 4214.

34. *Id.,* § 3, 1995 Tex. Gen. Laws 4213, 4214.

35. *Id.,* § 1, 1995 Tex. Gen. Laws 4213, 4213.

36. Act of May 24, 1999, 76th Leg., R.S., ch. 210, § 2, 1999 Tex. Gen. Laws 686, 686–87.

officer does not have authority to arrest outside the officer's jurisdiction unless (1) the offense is committed within the officer's presence or view, and (2) the offense is under some statute other than Transportation Code Title 7, Chapter C, and (3) the officer is licensed under Government Code Chapter 415, and (4) the officer is:

(a) a sheriff, or a sheriff's deputy, or a reserve deputy with a certain licence;

(b) a constable, or a deputy constable, or a reserve deputy with a certain license;

(c) a marshal or police officer of an incorporated city, town, or village, or a reserve officer with a certain license, and the municipality is:

(1) a Type A general-law city,

(2) a Type B general-law city,

(3) a Type C general law city (unless the governing body has defined the officer's duty so as not to include that authority),

(4) a home-rule city, or

(5) a special-law city (unless the statute that created the city, the charter, or the governing body acting under that statute and charter, has defined the officer's duty so as not to include that authority);

(d) a ranger or officer of the Department of Public Safety; or

(e) an investigator of the office of a county attorney, a district attorney, or a criminal district attorney.

A ranger or officer of the Department of Public Safety has the additional authority to arrest outside the officer's jurisdiction for an offense under Transportation Code Title 7, Chapter C, if the offense is committed in the officer's presence or view.

Some courts of appeals have recognized that the 1995 amendments have made obsolete the holding in Judge Campbell's opinion in *Angel.*[37]

Of course, the proper consideration of the statutes does not end the analysis in every case. For example, our decisions have recognized a doctrine of "hot pursuit" that allows an officer who begins to pursue a suspect within the boundary of a municipality to continue the pursuit and effect an arrest outside the boundary.[38]

The Court has not reached this issue in this case because it disposed of the appeal by holding that the arrest was made, in effect, by a deputy sheriff who had county-wide authority, and that the trial court did not err in admitting the evidence that was obtained from the arrest. I join the Court's opinion.

MEYERS, J., filed a dissenting opinion, in which JOHNSON, J., joined.

I disagree with the majority's failure to address the issue of whether home rule police officers have county-wide jurisdiction. At trial and on appeal, the State argued only that probable cause existed because of the informant's tip and because of Deputy Paquette's involvement in the arrest, but did not argue that the police officers in this case were within their jurisdiction when they stopped appellant. Only on petition for discretionary review by this Court does the State Prosecuting Attorney contend that the Odessa city police officers, as municipal officers, had county-wide jurisdiction under our decision in *An-*

---

**37.** *See Gerron v. State,* 57 S.W.3d 568, 570 (Tex.App.-Waco 2001), *vacated on other grounds,* 97 S.W.3d 597 (Tex.Cr.App.2003); *Hoitt v. State,* 28 S.W.3d 162, 165 (Tex.App.-Texarkana 2000), pet. dism'd; *Preston v. State,* 983 S.W.2d 24, 26 (Tex.App.-Tyler 1998). *Contra, Brother v. State,* 85 S.W.3d 377, 385 n. 7 (Tex.App.-Fort Worth 2002).

**38.** *See, e.g., Yeager v. State,* 104 S.W.3d 103 (Tex.Cr.App.2003).

*gel v. State,* 740 S.W.2d 727 (Tex.Crim. App.1987). The majority neglects this ground for review.

In *Angel,* this Court considered whether municipal police officers acting outside the city limits may arrest someone for a traffic violation without a warrant. *Angel,* 740 S.W.2d 727. We examined the question under Article 14.01 of the Code of Criminal Procedure, and former Article 6701(d) of the Uniform Act Regulating Traffic on Highways[1] (now TEX. TRANSP. CODE § 543.001).[2] We noted that although the two statutes together seemed to grant peace officers unlimited geographic jurisdiction for making warrantless arrests for offenses committed in their presence or view, "the authority to act may not necessarily define the geographic scope of that authority. That geographic scope, if absent from the statute granting authority to act, must find its source in some other statute ... or be controlled by common law." *Angel,* 740 S.W.2d at 732, *citing Preston v. State,* 700 S.W.2d 227, 229 (Tex. Crim.App.1985). We then looked to Articles 998 and 999 of the Local Government Code, which at the time were the sections governing the appointment of city police officers. *Angel,* 740 S.W.2d at 732–33. Those articles granted city police officers the same authority and jurisdiction as city marshals, which is county-wide. *Id., citing* TEX.REV.CIV. STAT. ANN. art. 998, 999. We therefore concluded that city police officers have county-wide jurisdiction to arrest offenders. *Angel,* 740 S.W.2d at 736.

If our examination of applicable case law were to end there, the State would be correct in asserting that the Odessa city police officers were within their jurisdiction when they stopped appellant for the traffic offense. However, Articles 998 and 999 of the Local Government Code were repealed in 1987, and recodified, in part, as section 341.001 of the current Local Government Code.[3] That section is applicable only to Type A general-law municipalities. *See* TEX. LOC. GOV'T CODE, § 341.001.

In 1995, chapter 341 of the Local Government Code was amended, and the section defining the powers of police officers from Type A municipalities was changed. The section now grants those officers the same "powers, rights, duties, and jurisdiction granted to or imposed on a peace officer by the Code of Criminal Procedure." TEX. LOC. GOV'T CODE, § 341.001(e)(1). However, the geographic jurisdictional limits for peace officers are not defined in the Code of Criminal Procedure, nor in any other statute.

When this Court held that city police officers have county-wide jurisdiction, that holding was based on Local Government Code sections which are now applicable, if at all, only to Type A municipalities. In fact, the language relied on in *Angel* has been eliminated even from the code section applying to Type A municipal police officers.

Subsequent court of appeals decisions have limited the application of *Angel's* holding to city police officers employed by certain types of municipalities. *See Yeager,* 23 S.W.3d 566, 570 n. 3 (Tex.App.-Waco 2000) (*Angel* does not apply to officers

---

1. Article 6701(d) of the Uniform Act Regulating Traffic on Highways read as follows:

   "Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of [the Uniform Act]."

2. Section 543.001 now reads:

"Any peace officer may arrest without warrant a person found committing a violation of this subtitle."

3. *See* TEX.REV.CIV. STAT. ANN. art. 998, 999 (Vernon 1963), *repealed by* Act of May 21, 1987, 70th Leg., ch. 149, § 49(1), 1987 Tex. Gen. Laws 1308.

employed by a Class B municipality); *Reichaert,* 830 S.W.2d 348, 351 (Tex.App.-San Antonio 1992, *pet. ref'd*) (*Angel* does not apply to officers employed by a Class C municipality). No court has directly addressed the question of whether *Angel* applies to officers employed by home rule municipalities. Because this was the State Prosecuting Attorney's first ground for review, I disagree with the majority's failure to address this issue and offer my own analysis.

In 2001, the United States District Court in Dallas was called upon to consider the recently changed and somewhat confusing law in this area. *United States v. Coleman,* 162 F.Supp.2d 582, 584–86 (N.D.Tex.2001). The District Court concluded that the geographic jurisdiction of city police officers after the 1995 amendments no longer depends on the type of municipality employing them, but on the officer's classification under Article 2.12 of the Code of Criminal Procedure.[4] *Id.* at 585. Municipal police officers are not authorized under Articles 2.12 and 14.03(g)[5] to make arrests outside their jurisdiction for traffic violations. *Id.* The *Coleman* court noted that there is no other statute defining the geographic scope of city police officers. Looking to the common law, as suggested by *Angel,* the court concluded that city officers' authority ends at the city limits.[6] *Coleman,* 162 F.Supp.2d at 585.

Home rule municipalities differ from Type A, B, and C general-law municipalities in that they "look to acts of the legislature not for grants of power, but only for limitations on their powers." *MJR's Fare*

*of Dallas, Inc. v. City of Dallas,* 792 S.W.2d 569, 572 (1990). However, the geographic scope of home-rule municipality police officers' jurisdictional authority cannot be limitless.

In *Arlington v. Lillard,* 116 Tex. 446, 294 S.W. 829 (1927), the Texas Supreme Court held that the City of Arlington, a home rule municipality, could not prohibit the use of certain streets by buses and other vehicles for hire. Those streets, although within the city limits of Arlington, were part of the state highway system. The court held that Arlington did not have the power to interfere with the use of the state highway beyond the city limits by prohibiting use of those streets, and that the effect of the ordinance purporting to do so was extraterritorial. *Id.* at 451–52, 294 S.W. 829. The court quoted an early constitutional commentator:

> The powers conferred upon municipalities must be construed with reference to the object of their creation, namely, as agencies of the State in local government. The State can create them for no other purpose, and it can confer powers of government to no other end, without at once coming in conflict with . . . maxims designed to confine all the agencies of government to the exercise of their proper functions. And wherever the municipality shall attempt to exercise powers not within the proper province of local self-government, whether the right to do so be claimed under express legislative grant or by implication from the charter, the act must be considered as

---

**4.** Municipal police officers are classified as peace officers under Article 2.12(3).

**5.** Article 14.03(g) states that only officers listed in Article 2.12(4), "rangers and officers commissioned by the Public Safety Commission and the Director of the Department of Public Safety" may make arrests for traffic

violations when outside their own jurisdiction.

**6.** The *Coleman* court did note that this general rule is subject to a "hot pursuit" exception. *Coleman,* 162 F.Supp.2d at 585, n. 2. *See also Yeager v. State,* 104 S.W.3d 103 (Tex.Crim. App.2003).

altogether *ultra vires,* and therefore void.

*Id.* at 451, 294 S.W. 829, *quoting* Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union 309 (7th ed.). This passage, although quoted in reference to the power of a home-rule municipality to legislate, is equally applicable to the situation here. A municipality simply does not have the power to extend the territorial jurisdiction of its employees beyond the geographic limits of the municipality.

Although the statutory basis for the *Angel* holding has been significantly changed (as discussed above), this Court's reasoning in the case is still sound. Because the geographic scope of home rule police officers' jurisdiction is not defined by statute, it must be controlled by common law. *Angel,* 740 S.W.2d at 732, *citing Preston v. State,* 700 S.W.2d 227, 229 (Tex.Crim.App. 1985). At common law, municipal police officers had jurisdictional authority only within the city limits. Therefore, the Court of Appeals was correct in holding that the Odessa city police officers did not have jurisdiction to make a warrantless search or arrest outside the city limits of Odessa. Nothing in Article 14.03 of the Code of Criminal Procedure would give the officers authority to make such an arrest outside their own municipality.

Moreover, the Court of Appeals correctly held that the officers could not arrest appellant for a traffic violation that occurred outside their jurisdiction and that they did not witness, based on a "collective knowledge" theory of probable cause. Deputy Paquette had jurisdictional authority and probable cause to believe that a traffic violation had been committed. However, the fact that Deputy Paquette was peripherally involved in the Odessa police's investigation of alleged drug possession was not enough to bestow authority on the Odessa police to stop appellant for the traffic violation and search his vehicle. The fact is that appellant was stopped, searched, and arrested by Odessa police officers although no crime at all ever occurred within the city limits of Odessa.

Because the majority fails to address the ground for review brought by the State Prosecuting Attorney and instead resolves this case based on Deputy Paquette's limited connection to the arrest, I respectfully dissent.