# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===================================

## ON MOTION FOR REHEARING

===================================

## NO. 03-06-00330-CR

**The State of Texas, Appellant**

**v.**

**Milton Dwayne Gobert, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D1DC06-904006, HONORABLE BOB PERKINS, JUDGE PRESIDING

---

## D I S S E N T I N G   O P I N I O N

Because Gobert's statement that "I don't want to give up any right, though, if I don't got no lawyer" is sufficiently and clearly an invocation of his right to consult with counsel, I would conclude that this Court's original opinion and judgment affirming the trial court's suppression order was correct. The State now urges on rehearing that Gobert's statement is a "conditional request" for counsel and therefore not a sufficient invocation.[1] The experienced trial judge—with the benefit

---

[1] The State also now claims on rehearing that, contrary to its original brief on appeal, "parts of this comment are close to being inaudible" and the tape "might also support his comment as being 'I don't want to give up these rights, though, before I got no lawyer.'" The State then argues: "Regardless of the precise words used, the conditional 'tenor and sense' of this early interchange, including its cryptic nature and possible use of a double negative, vividly depict the reasonableness of the detectives' responses, and illustrate the limitations of drawing conclusions from the cold written record, as have the courts and parties so far."

of the actual videotaped interview not in the record on appeal[2]—found otherwise. So should we. Accordingly, I respectfully dissent to the substituted opinion and judgment reversing the trial court's order.

The majority opinion agrees with the State that Gobert's statement to the interrogating officer was not a clear assertion of the right to counsel. The State asserts that Gobert "never expressly asked for a lawyer" and "never expressly stated he wanted an attorney there." Therefore, the State argues, the statement was not a "clear, unequivocal, unambiguous" invocation of his right to counsel but was "conditional" and therefore no assertion:

> [Gobert] may have meant he did not want to waive his right to silence since there was no lawyer there. That is not a request for an attorney. Or [Gobert] may have meant he wanted to talk to a lawyer before he decided whether or not he would waive his right to remain silent. What exactly he meant is just not clear. His statement being subject to more than one interpretation, the State submits it did not constitute an unambiguous, unequivocal request for counsel, nor did it constitute an unambiguous, unequivocal assertion of his right to remain silent. When the detectives immediately asked [Gobert] for clarification, [Gobert] promptly and definitely indicated his willingness to talk to them.

This argument confuses the right to counsel with the right to remain silent. It may have been unclear, as the State argues, whether Gobert "did not want to waive his right to silence since there was no lawyer there" or whether Gobert "wanted to talk to a lawyer before he decided whether or not he would waive his right to remain silent." But no reasonable police officer in the

---

[2] Although the videotape was attached to the State's petition for discretionary review, it was not in the record before us on appeal.

circumstances could construe Gobert's statement to mean that he was waiving a right to counsel. That Gobert thereafter evinced a willingness to talk to officers must be viewed in context.

### *The Controversy*

As the facts have evolved and now seem to be disputed, it is instructive to recite the passage of the interview at issue. It occurs at the very inception of the interview as Detectives Burgh and Scanlon enter the interview room. As the State acknowledges in its brief on appeal, "It was during the first few moments of the videotaped interview that the transaction at issue took place." The transcribed videotape[3] shows the following questioning by Detective Burgh:

Q. Hey? Hey, Milton. I'm Detective Burgh. This is Detective Scanlon.

A. Okay.

Q. Do you know a girl named Christine?

A. Yeah.

Q. You do?

A. My ex-girlfriend. My ex-fiancee.

Q. Okay. Before we get started, I—I mean, its—we have to read you your rights because you're under arrest right now. Okay? It's something we have to do.

A. What's the charge?

Q. Well, you're—they picked you up on a parole violation. You're in custody.

---

[3] The interview was videotaped. The videotape was presented to the judge at the suppression hearing. The record reflects that the trial court reviewed the actual videotape. A verbatim transcript of the videotape was included in the record on appeal; the videotape itself was not included in the record on appeal. The State attached a copy of the transcript to its brief on appeal.

Detective Scanlon then stated, "And the assault involving Christine." Detective Burgh continued, "So that's what we need to talk about. I want to read you this thing, okay? It's just—we got to do it. All right? Okay. Milton, you have the right to remain silent . . . ."

Immediately after Detective Burgh advised appellant of his rights, the following exchange occurred:

Q.      Do you understand those rights I just read to you?

A.      Yes, sir.

Q.      Okay. Can you—do you have a problem reading?

A.      No.

Q.      Can you read that out loud to me, the top line there?

A.      I have received and understand (inaudible) statement.

Q.      They're the one I just read to you.

A.      I don't want to give up any right, though, if I don't got no lawyer.

Detective Scanlon:      You don't want to talk?

Detective Burgh:      You don't want to talk to us?

A.      I mean, I'll talk to y'all. I mean, I know, you know, what she had said about it, you know. I'll speak with y'all, but (inaudible), man. I mean, I'll speak with y'all, you know.

Detective Scanlon:      Okay, signing this—signing this is not giving up your right. Signing this is acknowledging that this was read to you.

Detective Burgh:      Yeah.

Detective Scanlon:      Okay? Your choice to talk to us is different. This—all this is, is acknowledging you were warned.

4

After asking whether he should read "it" again, Burgh began questioning Gobert. Minutes later, as appellant discusses "Christine," Scanlon returns to the subject of the lawyer and the verbatim transcript reflects the following exchange between Scanlon and Gobert:

Q. I want to clear something up, though, because earlier you said you don't want to give up your right to a lawyer. I want you—I want you—I want to clear up the fact that you want to talk to us about this. Okay? You understand what I'm saying?

A. Yeah.

Q. I want to clear it up. I mean, that's—that's what you want to do, right?

A. Yeah.

Q. Okay. Where is Christina now?

At issue is Gobert's statement, "I don't want to give up any right, though, if I don't got no lawyer." Following a hearing, the trial court concluded that this was an unequivocal invocation of the right to counsel during custodial interrogation.

***The Hearing***

The motion to suppress sought the exclusion of the statement under Article 38.22 of the code of criminal procedure based on the denial of due process, the denial of the defendant's state and federal constitutional rights, and *Jackson v. Denno*, 378 U.S. 368, 380 (1964). At the initial hearing on the motion to suppress, the defense argued that Gobert's statement was a clear invocation of the right to counsel and that he had been deceived about why he was at the police station and what

5

the detectives wanted to talk about.[4]  After several pretrial hearings addressing the motion to suppress, the trial court granted Gobert's motion on the ground that Gobert's invocation of his right to counsel was unequivocal.  Relying on *Edwards v. Arizona*, 451 U.S. 477 (1981), the trial judge found that Gobert invoked his right to a lawyer: "I don't know what he can say to them that invokes his right to a lawyer any more than this."

The trial court dictated its findings and conclusions into the record, satisfying the requirements of Article 38.22 of the Texas Code of Criminal Procedure.  *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005).  The findings and conclusions were transcribed and were made a part of the appellate record.  *See Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).  The court announced its findings and conclusions as follows:

> I just don't find anything that is unequivocal [sic] about the statement 'I'm not going to waive any rights if I don't got no lawyer.'  I mean, I think that that's as unequivocal as I can imagine a statement being.

> I mean, if I were a defense lawyer and I was advising my client what to say, I can't imagine what advice I'd give him to say anything better than that.  I mean, he's saying that he's not going to waive any rights until he has a lawyer.  Under *Edwards*, once he makes that statement, he's got a right to a lawyer before anything else happens, you know.

> I just—you know, and he was not provided a lawyer.  They just—as soon as he says that, instead of saying, okay, you want a lawyer, we will get you a lawyer, or instead of—instead of asking him about the lawyer question, they just go totally

---

[4]  Gobert urged two issues at the hearings on his motion to suppress.  In addition to the ground on which the trial court ruled and suppressed the evidence, he also urged that the statements were involuntary based on the deception of the police officers.  The trial court did not rule on the second ground.

around that and they start saying, well you don't want to talk to us, which is not really what he had asked.

The right that he asked to invoke was his right to a lawyer, and he says at the same time he doesn't want to waive any rights until he's got one. I think the fact that they totally ignored what he said and kept on talking to him about does he want to make a statement, I think that that implies . . . they really don't believe in the warnings they have given him . . . .

* * *

And that's what he's saying, is he doesn't want to give up any right. He doesn't want to give up his right to remain silent; he doesn't want to give up his right to have a lawyer appointed for him; he doesn't want to give up his right to terminate the interview. You know, that what he says. I assume that that's what he means.

Now, the thing is, at that time what he says, 'if I don't got no lawyer,' maybe they might have some question at that point about whether he wanted a lawyer from that. I don't know how they could have that question.

But if they were going to ask any question, at that point, it seems to me, it was incumbent upon them to ask, okay, so you're saying you want a lawyer right now? Is that what you're saying? They want him to repeat his assertion that he wanted a lawyer, and then they could proceed along that line. But they don't ask that. They totally blow by the question of the lawyer deal.

* * *

Well, either *Edwards* means what it says or it doesn't. Either you can invoke your right to a lawyer or you can't. I don't know what he can say to them that invokes his right to a lawyer any more than this. . . . Under *Edwards*, it seems to me that once he says, I want a lawyer, that's it. I mean, that's the end of the ball game.

### The Appeal

The procedural posture of this case has become relevant to this appeal. On appeal from the trial court's ruling suppressing the statement, the State addressed two issues raised at the pretrial hearings: whether Gobert's statements were made in violation of his right to counsel and

7

whether the police deceived Gobert, rendering his statement involuntary by their manner of questioning. By a majority, this Court affirmed the trial court's ruling that the statements were obtained in violation of Gobert's right to counsel. Pursuant to Rule 50 of the Texas Rules of Appellate Procedure, and without requesting a response from Gobert's counsel,[5] a new majority substituted an opinion reversing the trial court's ruling. *See* Tex. R. App. P. 50 (allowing a majority of the justices who participated in a decision to summarily reconsider and correct or modify the court's opinion or judgment within 30 days after a petition for discretionary review is filed). The new majority opinion addressed the trial court's determination that the officers conducting the interrogation failed to honor Gobert's invocation of the right to counsel. The majority concluded then and now again in a revised opinion that Gobert's statement that "I don't want to give up any right, though, if I don't got no lawyer" was not an invocation of his right to an attorney.

***Standard of Review***

The majority considers this issue under a *de novo* standard. Because the application of the standard of review is relevant, I set it forth. We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In reviewing the trial court's decision, we do not engage in our own factual review. Rather, the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*,

---

[5] Gobert's counsel complains that the opinion was substituted and the result changed without permitting a response.

955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost complete deference to the trial court's ruling on (i) questions involving historical facts, and (ii) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *Carmouche*, 10 S.W.3d at 327. We may review *de novo* mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses. *Johnson*, 68 S.W.3d at 652-53; *Ross*, 32 S.W.3d at 856. We must affirm the trial court's ruling if it is supported by the record and correct under some theory of law applicable to the case. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

In this case, a videotape of the interview was provided to the trial court, and the record makes clear that the trial judge reviewed and considered its content to determine contested issues. *See Carmouche,* 10 S.W.3d at 332 (determining that the videotape contradicted officer's testimony in hearing on motion to suppress). The videotape, however, was not included in the record on appeal. Instead, the State included a verbatim transcription of the videotape. Whether a defendant has unambiguously invoked his right to counsel may involve—as here—a factual as well as a legal determination. *See, e.g.*, *Ross*, 32 S.W.3d at 857 (case falls within "almost total deference" standard of review because trial court's factual findings were dispositive).

Here, whether we defer to the factual findings of the trial court or review the issue *de novo*, I would reach the same conclusion. But any deference to the findings of the trial court compels the conclusion it then reached.

*Invocation of Right to Counsel*

Over twenty-five years after the landmark *Edwards* case and forty years after *Miranda*, certain bright lines have emerged. *See Edwards v. Arizona*, 451 U.S. 477, 485 (1981); *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Prior to custodial interrogation, a suspect must be advised that he has a right to consult with an attorney. *Miranda*, 384 U.S. at 467-68. Interrogation must cease immediately if the suspect states that he wants an attorney. *Id.*; *see also Edwards*, 451 U.S. at 485; *McCarthy v. State*, 65 S.W.3d 47, 51 (Tex. Crim. App. 2001); *Dinkins v. State*, 894 S.W.2d 330, 350 (Tex. Crim. App. 1995). If the suspect indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the questioning must cease. *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990); *Cross v. State*, 144 S.W.3d 521, 526 (Tex. Crim. App. 2004). A suspect's invocation of his right to counsel must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 103 (1975). An invocation of counsel must not be ambiguous, meaning the suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994).

In *Miranda*, the Supreme Court held that once an individual in custody invokes his right to counsel, interrogation "must cease until an attorney is present." 384 U.S. at 474. At that point, "the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." *Id*. *Edwards* then made clear that the admonitions of *Miranda* did not require any invocation to be in the syntax and grammar demanded of an interrogatory. Rather, in *Edwards* the Court found it "inconsistent with *Miranda* and its progeny for the authorities,

10

at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Id.* at 485. The Court held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id*. at 484.

By its assertion on appeal that Gobert "never expressly asked for a lawyer," "never expressly stated he wanted an attorney there," and that his statement was not a "clear, unequivocal, unambiguous invocation of the right to counsel," the State applies an erroneous standard for determining waiver when the accused has specifically invoked his right to counsel. The facts in *Edwards* are similar to those here. In the aspects in which the cases differ, the facts are more compelling here.

In *Edwards*, the defendant said: "I want an attorney before making a deal." *Id.* at 479. Similarly, Gobert announced: "I don't want to give up any right, though, if I don't got no lawyer." In *Edwards*, two detectives who were colleagues of the officer who had interrogated Edwards the previous night, came to the jail the next morning, stated they wanted to talk to Edwards, and readvised him of his *Miranda* rights. *Id.* Linking the assertion of right to counsel to an accused's response to his advice of rights, the Court in *Edwards* reasoned: "*Miranda* itself indicated that the assertion of the right to counsel was a significant event and that once exercised by the accused, 'the interrogation must cease until an attorney is present.'" *Id*. at 485 (quoting *Miranda*, 384 U.S. at 474).

Here, the same detectives advised Gobert that by signing the form he was not giving up any rights. They then plainly ignored his desire not to relinquish his rights in the absence of counsel. Immediately after Gobert refused to give up "any" rights "if I don't got no lawyer," both detectives said, "You don't want to talk?" and "You don't want to talk to us?" Then Scanlon assured Gobert that "signing [the *Miranda* warnings] is not giving up your right," and "Signing this is acknowledging that this was read to you," which was followed by "Your choice to talk to us is different." What could it mean to an accused to then be told that "all this is, is acknowledging that you were warned?"

In *Edwards*, the defendant agreed to make a statement as long as it was not tape-recorded: "I'll tell you anything you want to know, but I don't want it on tape." *Id.* at 479. Likewise, Gobert agreed that he wanted to "clear it up," but apparently believed that, having invoked his right to an attorney, nothing he thereafter said to the officers could be used against him until counsel had been provided. After Gobert had given a confession and the interrogation was winding down, Detective Burgh asked if Gobert would be willing to sign a written statement. Gobert became agitated and said, "I'm telling you that I done it, man. Why you have to type up a statement and all of that?" He added, "Oh, man, I mean why we have to go back through all this, you know, this is just like what to present to the judge or something, to the D.A., make your job easier or something?" Gobert's attempts to terminate the interview were similarly ignored. In response to Gobert's plea to "just take me to a lock-up, man," the officers continued their questioning. At the conclusion of the interview, as he repeatedly asks the detectives why they are reducing his statement to writing, Gobert realized he has given up every right he had.

*Edwards* could not be more clear. To impose an "additional safeguard," the *Edwards* Court held that a valid waiver of a defendant's right to counsel cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. *Id.* at 484. But the Court further held that an accused, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85. Likewise, the Texas Court of Criminal Appeals has recognized that "the *Edwards* rule acts as a 'clear and unequivocal' guideline to law enforcement precisely because it is 'relatively rigid.'" *McCarthy*, 65 S.W.3d at 51 (quoting *Arizona v. Roberson*, 486 U.S. 675, 681 (1988)). The court of criminal appeals held:

> [T]he *Edwards* rule does not take into account the good intentions of the individual police officer, the lack of official coercion or badgering in the particular case, or the actual voluntariness of a person's custodial statement. *Edwards* represents a bright and firm constitutional rule that applies to all suspects and all law enforcement officers.

*Id.*

The right to consult with counsel before and during any custodial interrogation is independent of the right to remain silent. Although Gobert did not expressly request a lawyer to be present, he unambiguously, if ungrammatically, told the officers that he did not want to give up "any" right "if I don't got no lawyer." This was a clear statement that Gobert was unwilling to waive any of his rights under *Miranda* and article 38.22 without first consulting counsel. At least one of the officers, Scanlon, showed he understood this when he said, "I want to clear something up,

13

though, because earlier you said you don't want to give up your right to a lawyer." Gobert's willingness to speak to the officers did not serve to waive his right to counsel.[6]

The opinions cited by the majority are distinguishable on their facts. In *Davis v. United States*, the Supreme Court held that a suspect's statement, "Maybe I should talk to a lawyer," uttered over an hour and a half into a custodial interrogation and after the suspect had previously waived his *Miranda* rights was an ambiguous assertion of the right to counsel. 512 U.S. at 458-59. Likewise, the Texas Court of Criminal Appeals held that the suspect's question in *Robinson v. State*, "Do I need to talk to a lawyer before I sign?" was plainly ambiguous; it was neither an assertion of the right to counsel nor a request for counsel. 851 S.W.2d 216, 223-24 (Tex. Crim. App. 1991). In the unpublished case of *Harper v. State*, a case cited by the majority, after the suspect confessed to the armed robbery in which a murder occurred, he said "I don't even want to talk unless I have me a lawyer and go through this shit. I don't have to go through this shit, right?" No. 03-00-00677-CR, 2001 Tex. App. LEXIS 7497, at *4-6 (Tex. App.—Austin Nov. 8, 2001, no pet.). No further interrogation took place until after one of the officers asked a question not posed to Gobert, "Are you telling us you want to terminate this interview and speak to an attorney or do you want us to continue to discuss this matter?" *Id.* The suspect expressed his desire

---

[6] Although the defendant carries the burden of unequivocally asserting his right to counsel, *see Davis v. United States*, 512 U.S. 452, 461-62 (1994), the State has the burden of establishing by a preponderance of the evidence that the defendant subsequently voluntarily waived his right to counsel. *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (holding State is required to establish alleged waiver "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it"). The State challenges only the trial court's finding that Gobert unequivocally invoked his right to counsel; it does not claim that, after invoking the right to counsel, Gobert subsequently waived that right.

to continue without counsel. *Id.*; *cf. Jones v. State*, 742 S.W.2d 398, 405 (Tex. Crim. App. 1987) (defendant's statement "I think I want a lawyer" was a clear and unequivocal assertion of right to counsel.)

Of course, waiver is possible when a request for counsel is equivocal and an interrogation need not cease following an ambiguous or equivocal reference to an attorney. *See Edwards*, 451 U.S. at 484; *Nash v. Estelle*, 597 F.2d 513, 517 (5th Cir. 1979). To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. *Davis*, 512 U.S. at 458-59. Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). The Supreme Court in *Miranda* held that if a defendant indicates "in any manner" that he wishes an attorney before speaking or that he does not wish to be interrogated further, questioning must cease. 384 U.S. at 444-45. Although a suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," *Davis*, 512 U.S. at 459, he need not speak with the level of clarity or "discrimination of an Oxford don." *Id.* at 476 (Souter, J., concurring). Whether viewed as an invocation of his right to remain silent or to invoke his right to counsel, I agree with the trial court that Gobert adequately communicated his desire to speak to an attorney before giving a statement that could be used against him. That the officers recognized this is clear from their retort "You don't want to talk to us?" and their return, after questioning, to clarify Gobert's intent.

15

When reviewing alleged invocations of the right to counsel, we look at the totality of circumstances surrounding the interrogation, as well as the alleged invocation, to determine whether a suspect's statement can be construed as an actual invocation of right to counsel. *Dinkins*, 894 S.W.2d at 351; *Lucas v. State*, 791 S.W.2d 35, 45-46 (Tex. Crim. App. 1989). Because the trial court is the sole judge of the credibility of the witnesses and the weight of their testimony, I would hold that the trial court's findings and conclusions are supported by the record. *Ross*, 32 S.W.3d at 855. That the trial court performed its function in evaluating credibility and demeanor is clear. The trial court observed:

> The problem, as far as I'm concerned, is this: You-all say that he has not stated specifically that he wants to invoke his right to remain silent or to invoke his right to cut off the interview. But the words that he uses—and, actually, if you watch the tape, his voice gets noticeably louder. Because, you know, there [are] a lot of things that he says on the tape that I couldn't understand and that he talks so low and mumbles and that sort of thing.

> *But one is very clear. When he gets particular to this point, he says out loud and pretty loudly, he says, 'I don't want to give up any right though, if I don't got no lawyer.' He tells—that is the loudest thing he says throughout that interview.*

> * * *

> *And that's what he's saying, is he doesn't want to give up any right. He doesn't want to give up his right to remain silent; he doesn't want to give up his right to have a lawyer appointed for him; he doesn't want to give up his right to terminate the interview. You know, that's what he says. I assume that that's what he means.*

> Now, the thing is, at that time what he says, 'if I don't got no lawyer,' maybe they might have some question at that point about whether he wanted a lawyer from that. I don't know how they could have that question.

> But if they were going to ask any questions, at that point, it seems to me, it was incumbent upon them to ask, okay, so you're saying you want a lawyer right now? Is that what you're saying? They want him to repeat his assertion that he

16

wanted a lawyer, and then they could proceed along that line. But they don't ask that. They totally blow by the question of the lawyer deal.

And as far as I'm concerned, after *Edwards*—it does seem to me that one of the paramount rights that's established in *Miranda* after *Edwards* is the right to a lawyer. I mean, I think that that's kind of a high trump card in *Miranda* litigation after *Edwards*, is you say you want a lawyer, that's the end of the ball game.

(Emphasis added.) The trial court then concluded:

[E]ither *Edwards* means what it says or it doesn't. Either you can invoke your right to a lawyer or you can't. I don't know what he can say to them that invokes his right to a lawyer any more than this. He says he doesn't want to waive any rights unless he's got a lawyer, and at that time, it seems to me, under *Edwards*, they have got to respect that right and they have got to say—maybe they can say to him—and I am not even sure they can do this under *Edwards*, but maybe they can say to him, okay, you're saying to us you want a lawyer, so you understand under the law we can't talk to you now until you get a lawyer or until you come back to talk to us individually or something like that. Maybe they can say that to him. I don't see how they can say anything else to him, though.

Not surprisingly, the trial court found that a statement that "I don't want to give up any right" necessarily means that one is giving up no rights.

These are explicit findings of historical fact made by the trial court; they must be given "almost complete" deference. *See Carmouche*, 10 S.W.3d at 327; *see also St. George*, 237 S.W.3d at 725. We review the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable to the case. *See Armendariz*, 123 S.W.3d at 404. Here, the trial court made explicit findings of fact. Moreover, the trial court was favored with the presentation of a videotape of the interview, which was not included in the record on appeal. *See Carmouche*, 10 S.W.3d at 332 (regarding importance of videotape). Applying a

17

bifurcated standard of review, we afford "almost total deference" to the trial court's findings of historical fact. *See Guzman*, 955 S.W.2d at 89. We review *de novo* mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Id.* In other words, we review *de novo* the trial court's application of law to the facts *as found by the trial court. Id.* Because the trial court is the sole judge of the credibility of the witnesses and the weight of their testimony, I would hold that the trial court's findings and conclusions are supported by the record.

Viewing the totality of the circumstances, *see Dinkins*, 894 S.W.2d at 351; *Lucas*, 791 S.W.3d at 45-46, I would hold that Gobert's statement, made immediately after he was advised of his rights under *Miranda* and article 38.22, that "I don't want to give up any right, though, if I don't got no lawyer" was a clear invocation of the right to counsel. The majority concludes that Gobert "told the police three times that he was willing to talk to the police, indicating that he was willing to proceed without having the assistance of counsel." This is precisely the type of police conduct *Edwards* forbids. *See* 451 U.S. at 484-85. Under *Edwards*, all interrogation should have ceased until counsel was provided. *Id.* Because the interrogation continued in violation of *Edwards*, I would hold that Gobert's statements to the police are inadmissible against him on the trial of any criminal case. *See* Tex. Code Crim. Proc. Ann. art. 38.22.

*Miranda* and *Edwards* together etch a bright line here. It is disturbing at best that in 2008 we are still debating whether a defendant is entitled to an attorney once he indicates a clear intent to invoke that constitutional right, and the State insists on parsing the grammar and syntax of double negatives to deprive an accused of his right to consult with an attorney, arguing that the statement was "conditional" and just not clear to "a reasonable police officer." That it was

18

sufficiently clear to the police officer is apparent from the officer's statement that "earlier you said you don't want to give up your right to a lawyer." The officer determined that he ought to at least *clarify* Gobert's statement but, instead of *clarifying* Gobert's declaration, he "clear[ed] up the fact that you want to talk to us about this. Okay? You understand what I'm saying?" Attempting to make a record to continue the interview and not to clarify Gobert's wishes regarding an attorney, the officers, as the trial court found, bypassed any opportunity to clarify the issue of counsel.

The indispensable right to counsel during custodial interrogation cannot function effectively as *Miranda* requires if the police are free to ignore an accused's invocation of his right to counsel. Indeed, the Supreme Court has made it clear beyond peradventure that this right is indispensable as well to the protection of an accused's Fifth Amendment privilege. *See Fare v. Michael C.*, 442 U.S. 707, 719-20 (1979); *see also Miranda*, 384 U.S. at 469. We should not be quibbling over an accused's clear intent to invoke the most basic of rights.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed: February 1, 2008

Publish