COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-196-CR

 

 

VERNON CANNON                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. Introduction

In four points, Appellant Vernon Cannon appeals
his conviction for capital murder.  We
affirm.

 

 








II. Factual and Procedural History

On December 16, 2004, Fort Worth Police were
called to the home of Fred Sparks by Bernice Haney.  Fred was an 82-year old widower who lived
alone.  Bernice, a friend of Fred, went
to check on him after he failed to keep a lunch date.  When Bernice arrived at the house she
discovered Fred lying on the floor in a pool of blood.  His house keys and wallet were missing, and
his back door was open.  Bernice called
the police while trying to administer CPR. 
Fred was declared dead on the scene by Medstar personnel.  The medical examiner determined that Fred
died as a result of being shot at close range in the head and neck four times
with a small caliber handgun.  Fred was
also hit in the head with an unknown object. 
The police found the base to a brass statue lying next to Fred=s body.  








While investigating the offense, the police
canvassed the area, asking neighbors about people they may have seen walking
throughout the neighborhood.  From
this investigation, the police were given the name Tejuna Choyce.  Apparently, Choyce frequently walked the
neighborhood, asking for money and occasionally doing odd jobs for people.  Fred had given her money in the past.  Choyce shared an apartment with Appellant
located less than a mile from Fred=s
house.  Based on statements Choyce made
to the police, Appellant became a suspect in the murder.  Appellant admitted to the police he
had pulled a gun on Fred, demanded money, hit him over the head with a brass
statue, and shot him to death in order to get the twenty dollars in Fred=s
wallet. 

Appellant was charged with capital murder for
killing Fred in the course of committing robbery.  Appellant pleaded not guilty to the charge of
capital murder.  The jury returned a
guilty verdict, and the judge sentenced Appellant to life in the Institutional
Division of the Texas Department of Criminal Justice. 

III. Legal and Factual Sufficiency

In Appellant=s first
and second points, he argues that the evidence was legally and factually
insufficient to support his conviction. 
Appellant utilized the same fact recitation and legal arguments for both
points.  As such, we will address both
points together. 

A. Standard of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d
691, 693 (Tex. Crim. App. 2005).








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at
414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417. 








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the
fact-finder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  Moreover, an
opinion reversing and remanding on factual insufficiency grounds must detail
all the evidence and clearly state why the finding in question is factually
insufficient and under which ground.  Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23
S.W.3d at 7. 

B. Analysis 

Appellant argues that the evidence is legally and
factually insufficient to establish that he committed the offense of capital
murder.  Appellant argues that he did not
have the specific intent to kill Fred, as shown by his statement to the police
that he Adidn=t want
the shooting to happen we just wanted to get his money.@ 








In order for murder to qualify as capital murder,
the killer=s intent to rob must be formed
before or at the time of the murder.  Alvarado
v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).  If there is evidence, however, from which the
jury could rationally conclude beyond a reasonable doubt that the defendant
formed the intent to obtain or maintain control of the victim=s
property either before or during the commission of the murder, then the State
has proven that the murder occurred in the course of robbery.  Id.  The jury may infer the requisite intent from
the acts, words, and conduct of the accused.  Id; 
Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). 

We hold that the evidence is both legally and
factually sufficient to support Appellant=s
conviction of capital murder.  The State
correctly points out that the requisite intent could be inferred by any
rational jury from the conduct of the accused. 
By Appellant=s own admissions the jury could
determine that (1) Appellant entered Fred=s home
with a deadly weapon, a medium-sized revolver; (2) once Appellant was inside
the home he pulled the gun out of his pocket and asked Fred for his money; (3)
Appellant struck Fred in the head with the base of a statue; (4) Appellant shot
Fred; (5) Appellant took money from Fred=s
wallet; and (6) Appellant took a statue from Fred=s house.









A jury could have inferred that Appellant took
the money and statue during the course of the murder or shortly after the
murder.  And from that conclusion, the
jury could have further inferred that the murder was committed during the
course of a robbery.  See Roberts v.
State, 220 S.W.3d 521, 526 (Tex. Crim. App. 2007), cert. denied, No.
07-5500, 2007 WL 2139364, at *1 (U.S. Oct. 1, 2007).  The mere fact that Appellant stated that he Adidn=t want
the shooting to happen we just wanted to get [Fred=s] money@ is not
enough to render the evidence insufficient to prove specific intent.  See Sells v. State, 121 S.W.3d 748, 754
(Tex. Crim. App. 2003) (holding that a defendant=s own
statement regarding his intent is not enough to render the evidence, without
more, insufficient).  Because the record
has not clearly revealed that a different result is appropriate, we must defer
to the jury=s determination of the weight to
be given the contradictory evidence.  See Johnson, 23 S.W.3d at 8.  Resolution of this type of conflict often
turns on the juror=s evaluation of credibility and
demeanor, and the jurors were in attendance when the testimony was delivered.  Id. 
The jury had the opportunity to evaluate Appellant=s
statement regarding his lack of intent to murder Fred, and they chose not to
believe it.  Thus, we give due deference
to the fact-finder=s determinations, particularly
those determinations concerning the weight and credibility of the
evidence.  Id.  

Accordingly, we overrule Appellant=s first
and second point.








IV. Motion to Suppress

In Appellant=s third
point, he argues that the trial court erred by overruling his motion to
suppress his confession that was allegedly taken in violation of Tex. Code Crim. Proc. Ann. art. 38.22
(Vernon Supp. 2006).

A. Standard of Review  








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).  But when the trial court=s
rulings do not turn on the credibility and demeanor of the witnesses, we review
de novo a trial court=s rulings on mixed questions of
law and fact.  Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  State v. Kelly, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006).  When the trial
court makes explicit fact findings, we determine whether the evidence, when
viewed in the light most favorable to the trial court=s
ruling, supports those fact findings.  Id.
at 818-19.  We then review the trial
court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.








When the record is silent on the reasons for the
trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  Id.  We then review the trial court=s legal
ruling de novo unless the implied fact findings supported by the record are
also dispositive of the legal ruling.  Id.

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  Armendariz v. State, 123 S.W.3d 401,
404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004); Ross,
32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

B. Analysis

Appellant argues that the motion to suppress
should have been granted because: (1) he did not understand his warnings under Tex. Code Crim. Proc. Ann. art. 38.22; (2) he would not have given a
statement if he understood that he could terminate the interview; and (3) the
officer used a method to induce Appellant to give a statement that was in
violation of the due process clause of the Texas and Federal Constitutions. 








After viewing the evidence in the light most
favorable to the trial court=s
ruling, we find that the evidence supports the trial court=s
finding that the confession was a free and voluntary act.  See Kelly, 204 S.W.3d at 818.  Appellant first complains that he did not
understand his warning under Tex. Code
Crim. Proc. Ann. art. 38.22. 
Although Appellant asserts this argument on appeal, his testimony at
trial is in direct contradiction of what he now claims.  For example, Appellant testified at trial
that he was never given the Miranda warnings and that the day of trial was the
first time he had seen the Miranda form, despite the fact that the form had his
signature on it.  And yet here, he argues
that he simply did not understand the Miranda warnings.  He gives no reasons to show why he did not
understand the warnings.  We know
definitively that his purported lack of understanding did not stem from an
inability to read or write; the record clearly shows that Appellant knew how to
read and write.[2]  Appellant had the opportunity to read the
Miranda form prior to signing it, as well as having it read to him by the
detective.  Neither was his capacity to
understand hindered by any drug use; the record explicitly states that the
Appellant was not impaired by drugs at the time the warnings were given to him.[3]  We find no evidence to support Appellant=s
argument that he did not understand the Miranda warnings given to him. 








Appellant also asserts that he would not have
given a statement if he had understood that he could terminate the
interview.  Again, Appellant cites no
evidence to support this contention.  In
contrast, the police detectives testified that Appellant agreed to give a
statement after he was given his Miranda warnings.  Appellant proceeded to sign and initial each
warning contained in the Miranda form, including the warning which states that A[y]ou
have the right to terminate the interview at any time.@  We find that Appellant did in fact know that
he could terminate the interview at any time.








Lastly, Appellant argues that the police
detectives used a method to induce him to give a statement that was in
violation of the due process clause of the State and Federal
Constitutions.  However, Appellant cites
no evidence to support his complaint. 
Instead, the record shows that Appellant went to the police department
voluntarily where he waited in a room for approximately thirty minutes before
officers came in the room, handcuffed him, and took him to the Tarrant County
Jail.  Appellant stated at trial that he
was never interviewed by anybody and that he did not sign a statement in which
he confessed to committing the offense. 
Appellant=s testimony at trial does not
align with his argument here or with the testimony of the police officers at
trial.  For instance, Appellant testified
that he never gave a statement to the police, however, he now argues that he
did give a statement but it was induced by the police officers through an
improper method.  In addition, the
officers testified that Appellant agreed to give a statement, that nothing was
promised in exchange for his statements, that he was not threatened or coerced,
that he was offered bathroom breaks and a soft drink, and finally that he
freely and voluntarily waived his rights prior to giving his confession to the
police.  We find no evidence that
indicates that the detectives used a method that violated Appellant=s due
process right to induce Appellant to give a statement.  We agree with the trial court that Appellant=s
confession was a free and voluntary act on his part.[4]


After reviewing the evidence in a light most
favorable to the trial court=s
ruling, we find that the trial court did not err by overruling Appellant=s motion
to suppress.  Therefore, we overrule
Appellant=s third point. 

 

 

 








V. Rule 403 Objection

In Appellant=s fourth
point, he argues that the trial court abused its discretion by allowing the
State to introduce into evidence a glove that allegedly contained Appellant=s DNA. 

To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion. 
Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526 U.S. 1070
(1999).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal to
rule.  Tex.
R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004).








Appellant argues that the State did not lay a
proper predicate for the introduction of the glove, which allegedly contained
the Appellant=s DNA.  Although Appellant properly made the trial
court aware of his objection to the evidence, he failed to inform the trial
court exactly how the predicate was deficient. 
See Bird v. State, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985),
cert. denied, 475 U.S. 1031 (1986) (holding that an objection to an
improper predicate that fails to inform the trial court exactly how the
predicate is deficient will not preserve error).  Furthermore, objections based solely on a
rule are considered general objections, and they do not adequately inform the
trial court of any specific complaint upon which it is to rule.  McKee v. State, No. 2-06-00203-CV,
2007 WL 289496, at *3 (Tex. App.CFort
Worth Feb. 1, 2007, no. pet.) (mem. op.) (not designated for publication).  By simply objecting on Rule 403 grounds,
the Appellant failed to preserve for appellate review any specific complaint on
how the glove was unfairly prejudicial. 
Accordingly, we overrule Appellant=s fourth
point. 

VI. Conclusion

 

Having overruled Appellant=s four
points, we affirm the judgment of the trial court. 

 

BOB
MCCOY

JUSTICE

 

PANEL A:   HOLMAN,
GARDNER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: October 18,
2007











[1]See Tex. R. App. P. 47.4.





[2]Q: You can read and write
okay?

 A: Yes, sir.





[3] AI was not high when the
shooting happened and I=m not high today.  By high I mean using drugs.@ 





[4]A[T]he Court is going to
deny the Motion to Suppress and state that Mr. Cannon agreed to come downtown
to the police office; that after he was down there, he was not originally in
custody; that Detective Carroll did, in fact, read him his Miranda rights,
which he initialed and signed; and that after doing such, he did give a
statement; that the statement was free and voluntarily made; that he was not
refused any type of bathroom privileges or water, soft drinks; he was not on
drugs at the time that this occurred; he did not request for an attorney; he
did not ask that the interview be terminated.@