COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-069-CR

 

 

JERRY BRIDGES                                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Jerry Bridges appeals his conviction
for possession of a controlled substance with intent to deliver.[2]  We affirm. 









While in custody the day after his arrest,
appellant signed a written statement admitting that he had bought, used, and
sold methamphetamine.  Following a
pretrial hearing, the trial court ruled the statement admissible, and it was
admitted at trial as State=s
Exhibit 1.  The jury found appellant
guilty as charged in the indictment and, after hearing additional evidence and
argument, assessed punishment at sixty years=
confinement.  

In point one, appellant claims that the trial
court abused its discretion in admitting State=s
Exhibit 1 because it lacked a warning required by code of criminal procedure
article 38.22 section 2(a)(4) that, if indigent, the accused has the right to
an appointed lawyer to advise him before and during any questioning.[3]  The State concedes in its brief that State=s
Exhibit 1 lacks the required warning, but the State argues that appellant has
forfeited his claim because he did not raise the issue with the trial
court.  We agree.

To preserve a complaint for review, a party must
have presented to the trial court a timely request, objection, or motion
stating the specific grounds for the desired ruling if those grounds are not
apparent from the context of the request, objection, or motion.[4]  An objection preserves only the specific
ground cited.[5]








At trial, appellant argued,

Also, I would point to the Court the case 729 S.W.2d 137(A).  I believe it is the State versus Taylor.  I just had it up here, but I=m not locating it, a case
that is shockingly similar to this one in which the defendant was brought in
and even made the statement that he didn=t read and write so well, such as what was
previously proffered here.  And the
statement was read to him just as it is alleged to here, but without any other
safeguards, just as it was here.  In that
case the Court ordered the statement to be suppressed.  The Court of Appeals ordered that it be
suppressed upon appeal.  That=s a case out of Beaumont,
as I recall.

 

. . .
. 

 

. . . and also I would B again, I was trying to
pull up that case.  I believe it was the
Taylor versus State, 729 S.W.2d.  It=s almost factually
identical to the present case.  And there
they ordered the statement suppressed just for the reasons because the officers
testified just almost as the officer did here just a few moments ago that, Well
he said he couldn=t read or write, so he B I read along with him
and I had him read through it, and he kind of indicated he under B he understood it.   

 








We can find no argument to the trial court that
suppression was required because State=s
Exhibit 1 lacked the section 2(a)(4) warning relating to appointed
counsel.  Nor is it apparent from the
context of counsel=s comments that appellant
opposed admission based upon section 2(a)(4).[6]  Trial counsel argued that there should have
been safeguards in place to ensure the voluntariness of a statement made by one
who could not read or write, not that section 2(a)(4)=s
warning pertaining to the appointment of counsel for indigent persons did not
appear on the face of the statement. 
Because appellant=s point one does not comport
with any objection raised at trial, we overrule it.

We overrule point two for the same reason.  In point two, appellant claims that the
admission of State=s Exhibit 1 violated the Fifth
Amendment of the United States Constitution and Miranda v. Arizona,[7]
but he did not raise this objection in the trial court.  Therefore, the complaint is not preserved for
review.

In points three and five, appellant argues that
State=s
Exhibit 1 was involuntary because appellant is mildly mentally retarded and did
not knowingly, intelligently, and voluntarily waive his article 38.22 and Miranda
rights. 













We review a trial court=s ruling
on a motion to suppress under a bifurcated standard of review.[8]  In reviewing the trial court=s
decision, we do not engage in our own factual review.[9]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[10]
 Therefore, we give almost total
deference to the trial judge=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor.[11]  But when the trial court=s
rulings do not turn on the credibility and demeanor of the witnesses, we review
de novo a trial court=s rulings on mixed questions of
law and fact.[12]  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.[13]  We then review the trial court=s legal
ruling de novo unless its explicit fact findings also dispose of the legal
ruling.[14]  We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.[15]  

When the suppression issue was litigated at a
pretrial hearing and again during trial, we consider evidence from both parts
of the record in determining whether the record, viewed in the light most
favorable to the trial court=s
findings, supports those findings.[16]









 Whether a
written statement is voluntary is determined by examining the totality of the
circumstances surrounding its acquisition.[17]  An accused=s mental
retardation can figure into the voluntariness inquiry.[18]  Illiteracy, too, is relevant, but does not
demand a finding of involuntariness.[19]


The
record shows the following:

$                  
Appellant was sixty-one years old and for a
number of years had owned and operated a business.

$                  
After appellant was arrested in a buy‑bust
operation, officers found $1,020.00 in cash and a small plastic bag of
methamphetamine in his pockets.

$                  
The night of his arrest, appellant telephoned
Lieutenant David Scott several times from jail.

$                  
The next day, Officer Jeff Davis went to the jail
to talk to appellant and see what he wanted. 


$                  
When Officer Davis arrived, appellant appeared
depressed, expressed remorse, and asked whether Lieutenant Scott was upset with
him and what was going to happen.








$                  
Officer Davis told appellant that he would like
to take his statement to get his version of what had transpired the previous
day, and appellant agreed.

$                  
At the booking-desk computer, Officer Davis
pulled up a form, and appellant was able to read along as Officer Davis read
him his Miranda rights less the right to appointed counsel.  

$                  
 Appellant
acknowledged that he understood his rights, agreed to waive them, signed a
waiver to that effect, and gave a statement that Officer Davis typed and
appellant signed.  

$                  
Appellant told Officer Davis that he had attended
school through seventh grade and could read Apretty
good@ but not
spell.

$                  
Officer Davis made no promises or threats to
appellant, and in giving the statement, appellant appeared to know what he was
doing. 

$                  
After the statement was prepared, appellant read
it back to Officer Davis.

$                  
Dr. Leon Peek, a psychologist, performed several
tests on appellant, and testified both at the pretrial hearing and before the
jury at trial.  

$                  
Dr. Peek concluded that appellant had an IQ of
58, was mildly mentally retarded, and could not Aread for
information,@ which meant that appellant
could understand words as he heard them but would have difficulty understanding
their meaning and importance. 








$                  
One of the tests showed that appellant was
malingering and not making his best effort in taking the tests, and Dr. Peek
believed that the other scores, including appellant=s IQ,
were underestimates.

$                  
The trial court, based upon its observation of
appellant=s behavior and demeanor, found
that appellant displayed no indications of mental incapacity such as that his
statement would not have been voluntarily made.

Having reviewed the trial court=s findings
in the appropriate light, the evidence presented at the suppression hearing,
and the evidence presented at trial, we hold that the trial court did not abuse
its discretion in finding that, under the totality of the circumstances,
appellant=s statement admitted as State=s
Exhibit 1 was voluntary.  We overrule
appellant=s points three and five.

In point four, appellant contends that the trial court
abused its discretion in admitting State=s
Exhibit 1 because it Acontained references to
inadmissible extraneous offenses and its probative value was outweighed by its
prejudicial effect.@ 








State=s
Exhibit 1 contained a list of persons to whom appellant admitted he has sold
methamphetamine.  It also contained
appellant=s admissions that he has bought
approximately a half-ounce of methamphetamine every week for the last three
years, that he uses about a quarter-ounce every week, that he sells the rest,
and that he sells enough methamphetamine to support his habit.

Admissibility of evidence is a matter within the
trial court=s discretion.[20]  As long as the trial court's ruling admitting
evidence was within the Azone of reasonable disagreement,@ there
is no abuse of discretion and its ruling will be upheld.[21]









Evidence of Aother
crimes, wrongs or acts@ is inadmissible in a criminal
case to prove that the defendant acted in conformity with his character to
commit crimes.[22]   Evidence of other bad acts may be
admissible, however, if it has relevance apart from its tendency to prove that
the defendant acted in conformity with his character.[23]  Evidence that logically serves to establish
some elemental fact, such as identity or intent; or that tends to establish
some evidentiary fact, such as motive, opportunity or preparation, leading
inferentially to an elemental fact; or evidence that rebuts a defensive theory
may be admissible.[24]  A>Relevant
evidence= means
evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence.@[25]  

Appellant was tried for possession of a
controlled substance, namely, methamphetamine, with intent to deliver.  Intent to deliver, therefore, is an essential
element of that offense.  Those portions
of State=s
Exhibit 1 that relate to appellant=s
selling methamphetamine are relevant to proving this essential element.        

Having held the evidence to be relevant, we must
determine whether its probative value was substantially outweighed by the
danger of unfair prejudice.[26]  To make this determination, we must consider
the inherent probative force of the proffered item of evidence along with the
proponent=s need for that evidence, and
balance these considerations against the following four factors that favor
exclusion: 








(1) any tendency of the evidence to suggest [a]
decision on an improper basis,

(2) any tendency of the evidence to confuse or
distract the jury from the main issues,

(3) any tendency of the evidence to be given
undue weight by a jury that has not been equipped to evaluate the probative
force of the evidence, and 

(4) the likelihood that presentation of the
evidence will consume an inordinate amount of time or merely repeat evidence
already admitted.[27]  








In this case, the probative force and the State=s need
to admit State=s Exhibit 1 outweigh the factors
that favor exclusion.  Appellant=s
admission that he regularly sold methamphetamine was compelling evidence that
appellant intended to sell methamphetamine. 
It would be rational for the jury to conclude from appellant=s
admission that he regularly sold methamphetamine that he intended to sell it in
this case.  His admission further served
to rebut appellant=s theories that the drugs were
planted on him and that the money he carried when he was arrested had come, not
from selling drugs, but from payments from his rental properties.  While it was likely to be given some weight
by the jury due to its probative value, the admission had no tendency to
suggest a decision on an improper basis or to confuse or distract the jury from
the main issues.  In addition, the State
did not take an inordinate amount of time to develop the evidence compared to
the rest of the record, nor is there any indication in the record that the evidence
distracted the jury from consideration of the indicted offense.  

Because the factors favoring exclusion do not
substantially outweigh the probative force of the evidence and the State=s need
for it, we hold that the trial court did not abuse its discretion in admitting
evidence of appellant's statement under rule 403.  We overrule point four.

In point six, appellant argues that the trial
court abused its discretion in failing to fully instruct the jury not to consider
State=s
Exhibit 1 unless it found that all the proper warnings had been given and that
appellant knowingly, intelligently, and voluntarily waived his rights before
making the statement.








When the evidence raises a fact issue as to
whether a defendant had been warned of his rights and voluntarily waived them
prior to making a statement, he is entitled to an instruction on the
voluntariness of his confession.[28]  In such cases, it is proper to include in the
charge an instruction informing the jury that if it has a reasonable doubt as
to whether a defendant knowingly, intelligently, and voluntarily waived his
rights before giving a confession, it must disregard the confession and not
consider it for any purpose.[29]


Appellant concedes that he neither requested a
voluntariness  instruction nor objected
to the voluntariness instruction the trial court included in the charge.  A challenge to the voluntariness of a
statement is a defensive issue.[30]
To preserve a complaint regarding the omission of a jury instruction on a
defensive issue for our review, the appellant must make a proper objection or
request in the trial court.[31]  The appellant in this case did neither.  Therefore, his complaint regarding the
omission of the instruction is waived. 
We overrule point six.








In point seven, appellant contends that his trial
counsel was ineffective in failing to object to the admission of State=s
Exhibit 1 because it did not contain proper 38.22 and Miranda warnings
on its face and because counsel failed to object to the trial court=s
inadequate instruction on voluntariness. 









We apply a two-pronged test to ineffective
assistance of counsel claims.[32]  First, appellant must show that counsel=s
performance was deficient, which requires showing that counsel made such
serious errors that he or she was not functioning as the Acounsel@
guaranteed by the Sixth Amendment.[33]  Counsel=s
performance is deficient only if it fell below an objective standard of
reasonableness measured by prevailing professional norms.[34]
The record must be sufficiently developed to overcome a strong presumption that
counsel provided reasonable assistance.[35]   Our scrutiny of counsel=s
performance must be highly deferential, making every effort to eliminate the
distorting effects of hindsight.[36]


Second, appellant must show that counsel=s
deficient performance prejudiced the defense; this requires showing that
counsel=s errors
were so serious as to deprive the defendant of a fair trial.[37]  Appellant must show that there is a
reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.[38]


A claim of ineffective assistance of counsel must
be firmly grounded in, and supported by, the record.[39]  When the record is silent as to possible
trial strategies employed by defense counsel, we will not speculate on the
reasons for those strategies.[40]








There is a substantial risk of failure when a
claim of ineffective assistance of counsel is brought on direct appeal.[41]  AUnder
normal circumstances, the record on direct appeal will not be sufficient to
show that counsel=s representation was so
deficient and so lacking in tactical or strategic decisionmaking as to overcome
the presumption that counsel=s
conduct was reasonable and professional.@[42]

This case demonstrates the Ainadequacies
inherent in evaluating ineffective assistance claims on direct appeal.@[43]  Although appellant filed a motion for new
trial, there is nothing in the record to show that he presented it to the trial
court to afford the trial court an opportunity to hold a hearing and inquire
into the reasons for trial counsel=s acts
or omissions.  Consequently, we cannot
determine whether counsel=s actions were grounded in sound
trial strategy because the record is silent as to possible trial strategies,
and we will not speculate on the reasons for those strategies.[44]  Nor is this a case where the trial record
alone is sufficient to support appellant=s claim
that counsel was ineffective.[45]  Therefore, appellant has failed to meet the
first prong of Strickland.  We
overrule point of error seven.








Having overruled all of appellant=s points
of error, we affirm the trial court=s
judgment.   

 

PER
CURIAM

 

PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

 

DO NOT PUBLISH        

Tex.
R. App. P.
47.2(b)

 

DELIVERED:  August 29, 2008











[1]See Tex. R. App. P. 47.4.





[2]See TEX. HEALTH & SAFETY CODE ANN. ' 481.112 (Vernon
2003).





[3]Tex.
Code Crim. Proc.
art. 38.22, ' 2(a)(4) (Vernon 2005).





[4]TEX. R. APP. P. 33.1(a)(1)(A); Mosley
v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied,
526 U.S. 1070 (1999).





[5]See TEX. R. APP. P. 33.1(a)(1)(A); Mosley,
983 S.W.2d at 265; Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim.
App. 1996), cert. denied, 522 U.S. 827 (1997). 





[6]In his brief, appellant
cites Thibedeaux v. State, 729 S.W.2d 137 (Tex. App.CBeaumont 1987, pet. ref=d), as the case to which
trial counsel meant to refer in his comments to the trial court.  But Thibedeaux deals with section
2(b), not section 2(a)(4).  See id.
at 137 (A[The] complaint before us
is that the confession did not comply with Tex.
Code Crim. Proc. Ann. art. 38.22(2)(b) (Vernon 1979).@).





[7]384 U.S. 436, 86 S. Ct.
1602 (1966).





[8]Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).





[9]Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. AppCFort Worth 2003. no
pet.). 





[10]State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App.
1999).





[11]Montanez v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App.
2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App.
2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d). 





[12]Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.





[13]State v. Kelly, 204 S.W.3d 808, 818B19 (Tex. Crim. App.
2006).





[14]Id. at 819.





[15]State v. Stevens, 235 S.W.3d 736, 740 (Tex.
Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim.
App. 2003), cert. denied, 541 U.S. 974 (2004).





[16]See Rachal v. State, 917 S.W.2d 799, 809
(Tex. Crim. App.), cert. denied, 519 U.S. 1043 (1996). 





[17]Armstrong v. State, 718 S.W.2d 686, 693
(Tex. Crim. App. 1985) (overruled on other grounds by Mosely v. State,
983 S.W.2d 249, 264 n.18 (Tex. Crim. App. 1998). 





[18]Delao v. State, 235 S.W.3d 235, 241
(Tex. Crim. App. 2007) cert. denied, 128 S. Ct. 1128 (2008); Penry v.
State, 903 S.W.2d 715, 744 (Tex. Crim. App.), cert. denied, 516 U.S.
977 (1995); Sosa v. State, 769 S.W.2d 909, 915 (Tex. Crim. App. 1989) cert.
denied, 529 U.S. 1056 (2000); see Arizona v. Fulminante, 499 U.S.
279, 286 n.2, 111 S. Ct. 1246, 1252 n.2 (1991). 





[19]Westley v. State, 754 S.W.2d 224, 229
(Tex. Crim. App. 1988).





[20]Montgomery v. State, 810 S.W.2d 372, 378B79 (Tex. Crim. App.  1990). 





[21]Rachal, 917 S.W.2d at 807.





[22]Tex.
R. Evid.
404(b).





[23]Montgomery, 810 S.W.2d at 388 (op.
on reh=g). 





[24]See Marc v. State, 166 S.W.3d 767, 775
(Tex. App.CFort Worth 2005, pet. ref=d); Massey v. State,
933 S.W.2d 582, 586 (Tex. App.C Houston [1st Dist.] 1996, no pet.).





[25]Tex.
R. Evid.
401; Marc, 166 S.W.3d at 775.





[26]Montgomery, 810 S.W.2d at 388B89 (op. on reh=g).  





[27]Gigliobianco v. State, 210 S.W.3d 637, 641B42 (Tex. Crim. App.
2006).





[28]Dinkins v. State, 894 S.W.2d 330, 353
(Tex. Crim. App.), cert. denied, 516 U.S. 832 (1995).





[29]Bell v. State, 582 S.W.2d 800, 808B09 (Tex. Crim. App.
1979), cert. denied, 453 U.S. 913 (1981).





[30]Mendoza v. State, 88 S.W.3d 236, 239 (Tex.
Crim. App. 2002); Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim. App.),
cert. denied, 510 U.S. 837 (1993).





[31]Tex.
R. App. P. 33.1;  Posey v. State, 966 S.W.2d 57, 61B62 (Tex. Crim. App.
1998)(trial courts have no duty to sua sponte instruct the jury on
unrequested defensive issues).





[32]Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex.
Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999). 





[33]Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064.





[34]Id. at 688B89, 104 S. Ct. at 2065.





[35]Bone v. State, 77 S.W.3d 828, 833 &
n.13 (Tex. Crim. App. 2002); Thompson, 9 S.W.3d at 813B14.





[36]Strickland, 466 U.S. at 689, 104 S.
Ct. at 2065.





[37]Id. at 687, 104 S. Ct. at
2064.





[38]Id. at 694, 104 S. Ct. At
2068.





[39]Thompson, 9 S.W.3d at 814; Jackson
v. State, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998).





[40]See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).





[41]Thompson, 9 S.W.3d at 813.





[42]Bone, 77 S.W.3d at 833.





[43]Patterson v. State, 46 S.W.3d 294, 306 (Tex.
App.CFort Worth 2001, no
pet.).





[44]See id.; Jackson, 877 S.W.2d at 771.





[45]See Andrews v. State, 159 S.W.3d 98, 103
(Tex. Crim. App. 2005); Thompson, 9 S.W.3d at 813.