# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00605-CR

---

**David Bartholomew Roush, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE COUNTY COURT AT LAW OF BURNET COUNTY
### NO. M-21925, HONORABLE W. R. SAVAGE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted David Bartholomew Roush of the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2003). Punishment was assessed at 60 days' confinement and a $2,000 fine, but the trial court suspended imposition of the sentence and placed Roush on community supervision for 12 months. In two issues on appeal, Roush challenges the trial court's denial of his motion to suppress evidence. We will affirm the judgment.

## BACKGROUND

At the suppression hearing, the trial court heard evidence that, at around 12:00 a.m. on October 14, 2006, Texas Highway Patrol Trooper Shannon Simpson was dispatched to the scene of a two-vehicle car accident on Highway 281 in Burnet County. Trooper Simpson testified that, when he arrived at the scene, he observed that "[b]oth vehicles had major damage." One of the vehicles, a pickup truck, "had damage in the front end," while the other vehicle, a

Ford Expedition, "had damage on the driver's side." Simpson also noticed that EMS was on the scene "treating one person," later identified as Carlos Hernandez. According to Simpson, "I believe when I got there, they were putting him on a stretcher from the shoulder of the road and then loaded him up in the ambulance." Simpson did not speak to Hernandez at the scene, but he testified that he was told by the driver of Hernandez's vehicle that Hernandez "had walked over and just kind of collapsed on the ground saying that he felt . . . terrible."

While Trooper Simpson was investigating the crash, he made contact with Roush, the driver of the Ford Expedition. Simpson testified that, upon contacting Roush, he had concerns for Roush "as far as his speech and the smell of alcohol." When Simpson asked Roush if he had been drinking, Roush told him that he had. At that point, Simpson had Roush perform the standardized field sobriety tests.[1] According to Simpson, Roush's performance on all three tests indicated to him that Roush was intoxicated.

Trooper Simpson then told Roush that he was taking him to the hospital to "do a draw." "During the ride over there," Simpson testified, "I told him that he was under arrest for DWI." Simpson further testified that, during the ride to the hospital, Roush admitted, in response to questioning from Simpson, to drinking "three or four margaritas" at a wedding party that night. Simpson testified that, prior to making this statement, Roush had been read the *Miranda* warnings.[2] Simpson also testified that he asked Roush questions from a DWI interview form and that he wrote

---

[1] The horizontal gaze nystagmus, the walk and turn, and the one-leg stand.

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

on the form the answers that Roush provided. After Simpson completed the form, he asked Roush to sign it, and Roush did so.

When they arrived at the hospital, Trooper Simpson ordered a mandatory blood draw from Roush after Roush refused consent to a voluntary blood draw. *See* Tex. Transp. Code Ann. § 724.012(b) (West Supp. 2007). Roush's blood specimen was subsequently analyzed and found to contain .17 grams of alcohol per hundred milliliters of whole blood. The legal limit is .08.

Prior to trial, Roush moved to suppress the results of the blood test, arguing that the State failed to comply with one of the statutory requirements for obtaining a mandatory blood draw. *See id*. The trial court denied the motion. Later, during trial, Roush moved to suppress the statement he made to Simpson that he had consumed "three or four margaritas," arguing that, prior to obtaining the statement, Simpson had not complied with the requirements of article 38.22 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). The trial court denied the motion.

Roush was subsequently convicted of the offense of driving while intoxicated and placed on community supervision for 12 months. This appeal followed.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Id*. That rule holds true even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). The trial judge is the

sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give trial courts almost complete deference in determining historical facts, but we review de novo the trial court's application of the law. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

## ANALYSIS

**Blood specimen**

In his first issue, Roush asserts that the trial court should have suppressed the results of the blood test administered by Trooper Simpson because, according to Roush, the State failed to satisfy one of the statutory requirements for obtaining a mandatory blood draw.

In relevant part, section 724.012 of the transportation code provides:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood if:
>
> . . . .
>
> > (3) at the time of the arrest the officer reasonably believes that as a direct result of the accident:
> >
> > . . . .
> >
> > > (B) an individual other than the person has suffered serious bodily injury; . . . .

Tex. Transp. Code Ann. § 724.012(b)(3) (emphasis added). According to Roush, the blood draw was improper because, at the time Roush's blood was drawn, Trooper Simpson did not have a

4

reasonable belief that Hernandez had suffered "serious bodily injury." Roush asserts that Simpson did not have enough information at the scene to determine whether Hernandez had suffered serious bodily injury. And, Roush further asserts, once Simpson arrived at the hospital and inquired about the nature of Hernandez's injuries, he was informed that the injuries Hernandez sustained were a broken finger and a sore neck, which, according to Roush, do not qualify as "serious bodily injury." In response, the State argues that section 724.012 requires only that Trooper Simpson had a reasonable belief, *at the time of Roush's arrest*, that Hernandez had suffered serious bodily injury, and that Simpson did. In the alternative, the State asserts that Simpson continued to have a reasonable basis to believe that Hernandez had suffered serious bodily injury after learning additional facts at the hospital prior to the blood draw. It observes that, for example, a broken finger can constitute serious bodily injury under some circumstances. *See, e.g.*, *Allen v. State*, 736 S.W.2d 225, 227 (Tex. App.—Corpus Christi 1987, pet. ref'd) (holding that injury which caused victim to have dysfunction "in her broken finger for more than three months constitutes a protracted impairment.").

"When interpreting a statute, we look to the literal text of the statute for its meaning, and we ordinarily give effect to that plain meaning, unless application of the statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, or if the plain language is ambiguous." *Badgett v. State*, 42 S.W.3d 136, 138 (Tex. Crim. App. 2001). According to transportation code section 724.012(d), "serious bodily injury" has the meaning assigned by the penal code. Tex. Transp. Code Ann. § 724.012(d). "Serious bodily injury" is defined in the penal code as "bodily injury that creates a substantial risk of death or that causes death,

5

serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46) (West Supp. 2008). We observe that, according to the plain language of section 724.012(b)(3), it is not necessary that a person actually suffer serious bodily injury. Rather, the statute provides that the officer have a *reasonable belief* that a person has suffered serious bodily injury. *See* Tex. Transp. Code Ann. § 724.012(b)(3)(b). The statute also plainly states that the relevant reasonable belief is that formed by the officer *at the time of the arrest*. *See id.*

Thus, our inquiry on appeal is whether the record supports the trial court's finding that, at the time of Roush's arrest, Trooper Simpson had a reasonable belief that Hernandez had suffered serious bodily injury. We find that it does. Simpson testified that, when he arrived at the scene, two vehicles had been involved in a crash and their respective front sides had suffered "major damage." EMS personnel had already arrived at the scene and were treating Hernandez. According to Simpson, "they were putting him on a stretcher from the shoulder of the road and then loaded him up in the ambulance." Although Simpson did not personally speak to Hernandez about the nature of his injuries at the scene, he did speak to the driver of Hernandez's vehicle, who, according to Simpson's testimony, told him that Hernandez had "collapsed on the ground." Simpson also described "seeing the EMTs pick up an individual, put him on a stretcher and take him to the emergency room, lights and sirens." As the trooper put it, "That tells me that there's something wrong. We did not know what. So they were taking him to have further evaluation and treatment. And so that constituted serious bodily injury in my mind."

To summarize, at the time of Roush's arrest, Simpson had information that Hernandez had been involved in a two-car collision in which the front sides of the vehicles had suffered "major damage," that Hernandez had "collapsed on the ground," and that Hernandez was being treated by EMS personnel, had been loaded into an ambulance on a stretcher, and had been taken to the emergency room while the ambulance's lights and sirens were activated. We conclude that the above evidence of facts perceived by Trooper Simpson at the time of arrest supports the trial court's finding that Simpson's belief that Hernandez had suffered serious bodily injury was reasonable.

In the alternative, even if evidence of facts later learned by Simpson at the hospital prior to the blood draw are considered along with his observations at the accident site, we conclude that the trial court would not have erred in overruling Roush's suppression motion. The evidence regarding precisely what Simpson learned at the hospital was disputed. Simpson testified that while he had learned at the hospital that Mr. Hernandez had a broken finger and would be discharged, "I didn't know anything else about . . . what his diagnosis was" and that these facts "did not change my opinion about the blood draw." There was also evidence that Simpson had learned at the hospital that Hernandez was sixty-two years of age. This evidence, considered in the context of the facts Simpson had ascertained at the accident scene, was sufficient to support a finding that Simpson was reasonable in continuing to believe, based on the totality of these facts, that Hernandez's injuries were of a degree constituting serious bodily injury. *See Allen*, 736 S.W.2d at 227.

We overrule Roush's first issue.

7

**Compliance with *Miranda* and article 38.22**

In his second issue, Roush asserts that the trial court abused its discretion in not suppressing his statement to Trooper Simpson that he had consumed "three or four margaritas." Specifically, Roush argues that the statement should have been suppressed because he did not make a knowing, intelligent, and voluntary waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), and article 38.22 of the Texas Code of Criminal Procedure.[3]

---

[3] Section 2 of article 38.22 of the code of criminal procedure provides:

No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

> (1)     he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2)     any statement he makes may be used as evidence against him in court;
>
> (3)     he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4)     if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5)     he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West 2005). Section 3(a) of article 38.22 provides:

8

Statements arising from a custodial interrogation may not be used by the State unless procedural safeguards were in place to secure the accused's Fifth Amendment privilege against self-incrimination. *See* U.S. Const. amend. V; *Miranda*, 384 U.S. at 444; *see also* Tex. Code Crim. Proc. Ann. art. 38.22. Any waiver of *Miranda* rights on behalf of an accused must be made knowingly, intelligently, and voluntarily. *See Miranda*, 384 U.S. at 475. Our inquiry into whether an accused has effectively waived his rights has two distinct dimensions: first, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id*. An express waiver is not necessary; waiver may be inferred from the actions and words of the person interrogated. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *Rocha v. State*, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000).

As support for his argument that he did not knowingly, intelligently, and voluntarily waive his rights, Roush relies on *Garcia v. State*, in which the court of criminal appeals stated that "the clearly preferable practice" was "for a written statement, to meet unambiguously the

> No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless . . . (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning . . . .

*Id*. art. 38.22, § 3(a).

requirements of Section 2(b), to contain the following language, near or adjacent to the signature of the individual giving the statement: 'I knowingly, voluntarily and intelligently waived the rights described above before and during the making of this statement.'" 919 S.W.2d 370, 387 (Tex. Crim. App. 1996) (op. on reh'g). The statement at issue in *Garcia* did not contain this "preferred" language. *See id.* However, despite finding that the statement was "by no means a model of clarity," the court in *Garcia* held that the statement was "sufficient to comply with Article 38.22." *Id.* This was because the statement contained the article 38.22 warnings and "additional language" indicating that the defendant "understood his rights and knew what he was doing when he gave his statement." *Id.* at 386. The court concluded that the district court did not abuse its discretion in admitting the statement. *Id.* at 387.

In this case, as in *Garcia*, the statement did not contain the "preferred" waiver language. However, the statement contained the article 38.22 warnings and the following "additional language": "The above legal warnings were either read by me or to me. I understand each of these rights and agree to waive (give up) these rights and answer the following questions." Roush signed the document, thus indicating that he understood and was waiving his rights. There is no indication in the record that Roush's waiver was the product of "intimidation, coercion, or deception." *See Moran*, 475 U.S. at 421. Additionally, Trooper Simpson testified that he read the *Miranda* warnings to Roush prior to Roush's statement that he had consumed three or four margaritas. We conclude that the above evidence supports the trial court's finding that Roush knowingly, intelligently, and voluntarily waived his rights prior to making the statement. *See Garcia*, 919 S.W.2d at 386-87; *Marx v. State*, 953 S.W.2d 321, 334-35 (Tex. App.—Austin 1997),

10

*aff'd on other grounds*, 987 S.W.2d 577 (Tex. Crim. App. 1999) (finding "sufficient evidence" of compliance with article 38.22 when officer testified that he read required warnings to defendant and statement itself contained warnings, additional language similar to language in *Garcia*, and defendant's signature).  Thus, the trial court did not abuse its discretion in denying Roush's motion to suppress the statement.

We overrule Roush's second issue.

## **CONCLUSION**

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   August 29, 2008

Do Not Publish