02-10-283-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00283-CR

 

 


 
 
 THOMAS BLACK
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

FROM THE 211TH DISTRICT Court OF Denton
COUNTY

------------

OPINION

----------

A
jury convicted Appellant Thomas Black of the possession of at least four grams
of methamphetamine but less than 200 grams, with the intent to deliver.  The
trial court sentenced him to forty years’ confinement.  Appellant brings five issues
on appeal, challenging the sufficiency of the evidence linking him to the
contraband and contending that the trial court should have suppressed evidence that
Appellant argues was illegally seized and that the trial court abused its
discretion by admitting the hearsay contents of the cell phone found on
Appellant’s person.  Because the evidence is sufficient to show a nexus between
Appellant and the contraband and because the trial court did not commit
reversible error by admitting the evidence that Appellant sought to suppress, including
the hearsay contents of the cell phone, we affirm the trial court’s judgment.

I.  Background
Facts

After
receiving a tip from a bounty hunter, five Denton police officers went to the
apartment of siblings Laci and John Feagley to execute a felony warrant for the
arrest of Nick McBee, who was at the apartment.  A number of other people were
also at the apartment, including Appellant, who had gone to the apartment with
John Owens.  The officers found Appellant and John Feagley in the parking lot
working on the stereo in Laci’s car.  Officer James Bolin detained Appellant
and John Feagley while the other officers went to the apartment.

Two
of the officers went to the apartment door and knocked.  Officer David Acrey
heard the door lock and then heard “a lot of commotion inside.”  Acrey knocked
again and identified himself as a police officer.  A female in the apartment
stated that she was not dressed, “and it would be a minute.”  Acrey heard the
sound of plastic shades on a sliding door, “like somebody might have been
trying to go out the balcony door.”  Laci opened the door soon after that, and
the officers entered.  One of the officers arrested McBee on the apartment’s
balcony.

In
the apartment, officers saw in plain view marijuana, a bong, and scales.  Officer
Craig Fitzgerald asked Laci for permission to search the apartment, and she
consented.  The officers found a laptop bag and a glasses case, which Owens and
Laci identified as Appellant’s.  In the laptop bag, officers found Appellant’s
identification, a small baggie of marijuana, and a piece of paper with numbers
written on it.  They found several baggies containing methamphetamine in the
glasses case.  Officers also found a baggie containing methamphetamine next to
a chair in the living room.

The
baggie found by the chair contained 1.28 grams of methamphetamine; the baggies
found in the glasses case contained a combined total of sixteen grams of methamphetamine.

The
officers arrested Appellant and searched him.  In their search of his person,
they found a cell phone.  After obtaining a search warrant, the police searched
the contents of the cell phone.  The phone showed outgoing text messages to one
number that said,

·       
“no,
cause he has to come from denton, and Id only be makin 3 an oz. plus you only
have to take half as much”; and

·       
“Its
gonna take him 45 to an hour to drive to your house from Denton”;

and
another outgoing text message to “Crystal” stating, “John just got here, let me
know if you still need that pretty quick, before he leaves Denton.”

The
phone had incoming text messages that said, “I got a trick right now so yeah
but dnt no how much”; “Can u hook me up for 140? do u hav a ride?”; “Can you
charge me fifteen an oz”; and “I have your money and want 2 i have 55.”  The
phone also had stored photographs of what looked like methamphetamine.

At
trial, Appellant objected to the admission of evidence from the laptop bag on
the ground that he had not consented to its search.  He objected on Fourth
Amendment and hearsay grounds to the admission of the data taken from the cell
phone; he also complained about the denial of cross-examination.  Appellant additionally
moved to suppress the evidence of the drugs and the cell phone and moved for a
directed verdict.  The trial court denied the motions.

II. 
Suppression Issues

In
his first two issues, Appellant argues that the trial court reversibly erred by
denying his motion to suppress the contraband and the contents of the cell
phone.  He did not file a written motion to suppress but, rather, argued an
oral motion to suppress after the State rested its case in chief.  That is, he
waited until the complained-of evidence had been admitted before lodging his
motion to suppress that evidence, although he did object to a greater or lesser
degree when the evidence was offered.  A visiting judge heard the trial and did
not enter findings of fact or conclusions of law when she denied Appellant’s
motion to suppress.

We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.[1] 
We give almost total deference to a trial court’s rulings on questions of
historical fact and application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor, but we review de novo
application-of-law-to-fact questions that do not turn on credibility and
demeanor.[2]

When
the record is silent on the reasons for the trial court’s ruling, or when, as
here, there are no explicit fact findings and neither party timely requested
findings and conclusions from the trial court, we imply the necessary fact
findings that would support the trial court’s ruling if the evidence, viewed in
the light most favorable to the trial court’s ruling, supports those findings.[3]  We then review
the trial court’s legal ruling de novo unless the implied fact findings
supported by the record are also dispositive of the legal ruling.[4]

We
must uphold the trial court’s ruling if it is supported by the record and
correct under any theory of law applicable to the case even if the trial court
gave the wrong reason for its ruling.[5]

Appellant
argued in his oral motion to suppress that the Fourth Amendment to the
Constitution of the United States mandated suppression of the contraband found
inside the house because the only evidence of a nexus between the
methamphetamine and him was uncorroborated accomplice testimony.  He argued
that the Fourth Amendment also mandated suppression of the contents of the cell
phone found on his person because the cell phone was not in his name and did
not identify the person texting.

Appellant
argued that the underlying sources of the information provided the police in
support of his arrest—Owens and Laci, the two accomplices in the apartment who
identified him as the owner of the glasses case containing multiple baggies of
methamphetamine—were unreliable because they were accomplices.  That is, the
evidence of a nexus between Appellant and the methamphetamine found inside the
apartment was provided by Laci, who lived in the apartment with her brother,
and Owens.  Appellant argued that Laci and Owens were equally unreliable.  He
based this argument on the facts that Owens testified that everyone in the
apartment was smoking methamphetamine and ice, and the police testified that
they had observed a bong, scales, marijuana, and methamphetamine in plain view
inside the apartment, but Laci denied any knowledge of the presence of any
drugs or drug paraphernalia inside her apartment.

Appellant
also contended in his oral motion to suppress that the contents of the cell
phone were necessary to corroborate the accomplice testimony.  The police
officers stated that they had seized the cell phone incident to Appellant’s
arrest.  The officers first seized and handcuffed Appellant either for officer
safety or because they believed that he was McBee, for whom the officers had an
arrest warrant.  When the police realized that Appellant was not McBee, they
removed the handcuffs.  The search of Appellant for officer safety does not
appear to have revealed the cell phone.  After the officers found the
methamphetamine and were told by Owens and Laci that the methamphetamine
belonged to Appellant, the officers again handcuffed Appellant and searched
him.  It appears that this was the search that yielded the cell phone.

The
officers viewed the picture of methamphetamine that was used as the screensaver
upon Appellant’s arrest, but, instead of continuing to scroll through the
contents of the cell phone, the officers showed a conscientious knowledge and
regard for the law by properly securing a search warrant.  Only after securing
the search warrant did any police officer search the contents of the cell
phone.

Although
the initial seizure of the cell phone was not pursuant to a warrant, Appellant
states in his brief that seizure of the cell phone was not the crucial element
of his complaint.  Rather, he argues that the search of the cell phone required
a warrant.  But the record provides that the officers had a warrant before they
searched the cell phone.  We hold that merely viewing the screensaver did not
constitute a search.  No search occurred until after the officers had secured a
search warrant for the cell phone.  We overrule Appellant’s first issue.

In
his second issue, Appellant challenges the search of the laptop bag and the
glasses case, contending that he did not give his consent to search them and
that the searches therefore violated the Fourth Amendment of the United States
Constitution and article I, section 9 of the Texas Constitution.  He objected
to the admission of the contents of the laptop bag only on the grounds of chain
of custody and the scope of Laci’s consent to search the apartment.  Appellant
argued that she had no authority or standing to give police consent to search
the bag.  Yet, before the State offered into evidence the items found inside
the bag, Appellant himself proved up some of the contents of the bag—his “ID”
and “a little baggie of marijuana”—in questioning Officer Acrey.  The jury
therefore already knew about those contents before Appellant untimely objected to
the admission of the physical exhibits.

A
trial court’s erroneous admission of evidence will not require reversal when
other such evidence was received without objection, either before or after the
complained-of ruling.[6]  This rule applies
whether the other evidence was introduced by the defendant or the State.[7] 
Consequently, because the jury already knew about the incriminating evidence
connecting Appellant to both the laptop bag and its contents, any error in
admitting them is not reversible.

Additionally,
after the State offered the piece of notebook paper with notations into
evidence over Appellant’s chain of custody and scope of consent objections, he raised
no objection to Officer Fitzgerald’s describing State’s Exhibit No. 4 as a
“piece of notebook paper with what appears to be amounts, quantities written on
it.”  Nor did Appellant object to Officer Fitzgerald’s further explanation
interpreting the notes written on the notebook paper:  “Methamphetamines,
narcotic trafficking, nine grams, 1.9 grams, and the amounts of methamphetamine.” 
Appellant also did not object when Officer Fitzgerald agreed that in his
experience in investigating narcotics cases, it was common to come across “what
are generally termed as drug notes.”

Generally,
in order to preserve his complaint for appellate review, Appellant was required
to object each time the complained-of evidence was discussed or to request and
be granted a running objection.[8]  When, however, an
objection is presented as a motion to suppress heard outside the presence of
the jury, that single objection preserves the issue for appellate review.[9]

The
question, then, is whether Appellant’s objection to the piece of notebook paper
was a simple objection or an objection presented as a motion to suppress and
heard outside the presence of the jury.  After examining the record, we hold
that Appellant merely lodged an objection to the admission of the sheet of
notebook paper into evidence.  Nothing in his objection would have suggested to
the trial court that he was lodging a motion to suppress.  Nor did any
suppression hearing occur outside the presence of the jury.  Because Appellant’s
objection to the evidence did not rise to the level of a motion to suppress, we
hold that Appellant was required to request a running objection or to object to
each reference to the sheet of notebook paper or its contents.  Appellant did
lodge a motion to suppress after the State had rested, but by that time all the
evidence of which he had complained was before the jury.  His motion to
suppress lodged after the State had rested was not timely.  Consequently,
Appellant has failed to preserve his complaint regarding the admission of the
sheet of notebook paper from the laptop bag.  We overrule that portion of Appellant’s
second issue challenging the admission of the laptop bag and its contents.

The
glasses case was admitted as State’s Exhibit 14.  Not only did Appellant lodge
no objection, he affirmatively stated that he had no objection to its
admission.  When the State offered the methamphetamine that was contained in
the glasses case, Appellant again stated that he had no objection. 
Additionally, Appellant had asked Officer Acrey the following questions,

Q.  And there was
nothing in that little case that identified my client, was there?

A.  No.

Q.  And it was a—was it
a sunglass case or something like that?

A.  Yea, or glasses
or something.

Q.  Or glasses or
something, in plain view.  Now, to be sure, there was a decent amount of—of—of
methamphetamines in there.  Right?

A.  Yes.

This
exchange occurred before the State ever sought to offer evidence of the
contents of the glasses case.

To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.[10] 
Further, the trial court must have ruled on the request, objection, or motion,
either expressly or implicitly, or the complaining party must have objected to
the trial court’s refusal to rule.[11]  A
reviewing court should not address the merits of an issue that has not been
preserved for appeal.[12]

For
the reasons stated above, Appellant failed to preserve his complaint regarding
the admission of the glasses case and its contents.  We overrule the remainder
of his second issue.

III. 
Admission of Text Messages

In
his third issue, Appellant contends that the trial court abused its discretion
by “admitting, over hearsay objection, text messages when the State used
pictures of texts from a cell phone found on Appellant’s person and the
pictures were used to apply the content of the texts to link him to possession
of controlled substances.”

At
trial, in addition to his Fourth Amendment complaint, Appellant objected that
the contents of the cell phone were hearsay because there was no way to tell
who made the statements found on the cell phone and because they were offered
for the truth of the matter asserted.  He also argued that he had no way to
cross-examine an unknown person:

[T]he issue is it
becomes hearsay because, number one, it’s unreliable.  We don’t know, number
one, who is sending those text messages.  It doesn’t identify the person talking.
 We can’t just assume that it’s the Defendant, and it’s definitely offered to
prove the truth of the matter asserted, so it’s a hearsay statement I don’t
have any way of cross-examining.  Number one, I don’t know who is receiving it,
and I don’t know who sent it.

.
. . . 

How could it not be offered for the proof of the matter
asserted?  We don’t know who’s sending those.  We can’t just assume that he is
just because he was the person that was found with it in his possession at the
time of the arrest.

Appellant
does not raise the violation of his right to cross-examination on appeal.  Further,
we note that Appellant offers a conclusory, unsupported subsidiary complaint on
appeal that none of the exhibits was produced by business records affidavit,
but, rather, through the State’s crime scene technician who took pictures of
the cell phone screen.  We overrule this complaint as inadequately briefed.[13]

The
evidence shows that Appellant was released from prison at least a week before
the dates on the text messages.  The cell phone was in his possession when it
was confiscated.  Appellant does not challenge the fact that the text messages
were sent, the reliability of the notation of the date on the text messages, or
the nexus between the messages and himself other than to argue that there was
no way to determine who sent or received the messages.

We
view Appellant’s complaint on appeal as one of hearsay and authentication.  Appellant’s
authentication complaint seems to be two-fold:  no showing of who sent the
messages and no showing of who received the messages.

The
law Appellant cites for this issue is not helpful.  He distinguishes Lozano
v. State, an unpublished case holding that a defendant’s own out-of-court
statement against interest found in a text message is not hearsay,[14] and a similar
case[15] by pointing out that
there is no evidence in the case before us that he authored any of the texts. 
He also references a case that he incorrectly states upheld text message
evidence on the basis of optional completeness but which in fact upheld the
admission of a text message over a rule 403 objection.[16]

This
court is sympathetic with Appellant’s position in trying to find law directly
on point, given the speed with which technology has changed.  To guide parties
in raising and preserving such issues, courts are going to have to determine at
some point whether a cell phone is akin to a computer, a file cabinet, a personal
notebook or diary, or something else, and the rules of evidence should be
modernized.  But Appellant does not challenge the technology.  Nor does he
challenge the rule 901 predicate required for the authentication or
identification of most electronic devices.[17]

As
to Appellant’s hearsay complaint, to the extent that the State offered any of
the photographs of the images from the cell phone for some purpose other than
the truth of the matter asserted, then such evidence was not hearsay.  Further,
the screensaver picture of what appeared to be methamphetamine was not a
statement; it was therefore not hearsay.[18]

But
as to the remaining images from the cell phone, what the police viewed were
clearly messages.  A police officer could testify that she saw a message on the
cell phone screen.  The ticklish question is the degree to which the officer could
properly describe the message.  The officer could say that the message was
short or long but could not lawfully describe its nature absent a hearsay
exception.  For example, the officer could testify that the message was three
lines long but could not testify to the contents of the three lines.  The
officer could testify that it was a page of words and numbers, but not that the
message was a receipt for furniture.

The text
messages here purport to be expressions of a desire to engage in a drug
transaction.  This is a drug case.  We therefore disagree with the State that
the text messages were not offered for the truth of the matter asserted. 
Further, because a person (although not identified in court) generated each
text message—that is, the contents of the messages were produced by human
thought and action—the messages are not computer-generated data and therefore
not classified as nonhearsay.[19]  We consequently
conclude that they are hearsay.

Further,
no hearsay exception justifies the admission of the text messages.  Because
there was no showing that Appellant wrote or ratified any of the messages, and
indeed, no showing that the messages were written while the cell phone was in
Appellant’s possession, the messages did not qualify as statements that he made
against his penal interest and therefore did not fall under that hearsay
exception.[20]

Consequently,
we hold that the contents of the messages were inadmissible hearsay and that the
fact that “drug messages” were on the cell phone was likewise inadmissible
hearsay.  The trial court therefore abused its discretion by admitting this
evidence.

We
have already held that the police lawfully searched the cell phone, and
Appellant did not raise his Sixth Amendment claim that his right to
cross-examination had been violated on appeal.  The erroneous admission of the
cell phone’s contents and the characterization thereof as “drug
messages”—inadmissible hearsay—is therefore nonconstitutional error governed by
rule 44.2(b), which provides that an error that does not affect substantial
rights must be disregarded.[21]  A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury=s verdict.[22]  Conversely, an error does
not affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@[23]

In
making these determinations, we review the record as a whole, including any
testimony or physical evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, and the
character of the alleged error and how it might be considered in connection
with other evidence in the case.[24] 
We may also consider the jury instructions, the State=s
theory and any defensive theories, whether the State emphasized the error,
closing arguments, and even voir dire, if applicable.[25]

Ignoring
the inadmissible cell phone messages and the characterization of them as “drug
messages,” the fact that Appellant possessed the cell phone was admissible. 
The fact that drug dealers use cell phones was also admissible.  Further, the
police found Appellant’s identification in the computer bag.  The baggies of
methamphetamine in the eyeglasses case themselves provided evidence that the
drugs were packaged to sell.  Notations on the sheet of paper the police found in
the computer bag also indicate drug sales.  We hold that the “drug notes”
indicating methamphetamine sales and Appellant’s identification, both found in
the computer bag, sufficiently corroborate the accomplice testimony.  The
screensaver picture of methamphetamine would not alone be sufficient
corroboration, but it does serve as additional corroboration.

We
also point out that the corroboration goes only to Appellant’s nexus to the
methamphetamine.  The methamphetamine itself was properly admitted, and
Appellant’s trial counsel specifically stated that he had no objection to its
admission.

Consequently,
we hold that in the context of the entire case against Appellant, the erroneous
admission of the hearsay text messages from the cell phone and their
characterization as “drug messages” did not have a substantial
or injurious effect on the jury=s verdict and did not affect
his substantial rights.[26] 
Thus, we disregard the error.[27] 
We overrule Appellant’s third issue as presented at trial and in Appellant’s
brief.

IV.  Sufficiency of the Evidence Affirmatively
Linking Appellant to the Contraband

Appellant
argues in his fourth and fifth issues that the trial court erred by denying his
motion for a directed verdict of acquittal because the evidence is insufficient
to show an affirmative link between Appellant and the methamphetamine.  He
bases his argument in large part on the facts that the contraband was located
in the Feagleys’ locked apartment while he was outside in the parking lot and
the cell phone data referencing some kind of transaction could not be directly
tied to him.

To
prove unlawful possession of a controlled substance, the State must show that
Appellant (1) exercised control, management, or care over the substance and (2)
knew that it was contraband.[28]  The evidence, direct or
circumstantial, must establish, to the requisite level of confidence, that Appellant’s
connection with the methamphetamine was more than just fortuitous.[29]

There
is no evidence that the baggie of methamphetamine sitting beside the chair
belonged to Appellant, but Appellant does not challenge his nexus to that
methamphetamine.

Sufficient
evidence does, however, support the conclusion that the sixteen grams of
methamphetamine found in the glasses case belonged to Appellant.  The record
contains evidence to support a conclusion that Appellant had been inside the
apartment:  Witnesses testified that he had been there, and a computer bag containing
his identification was found inside the apartment but in a different location
that the baggie of methamphetamine by the chair.  Laci and Owens told the police
and testified that the methamphetamine in the glasses case belonged to
Appellant.  The record shows that Owens provided Appellant the glasses case
knowing that he would use it to house his methamphetamine.  Laci claimed that she
knew that the methamphetamine was Appellant’s but that she did not notice the
scales or bong in her apartment or see the marijuana in her bathroom.  We hold that
the evidence sufficiently links Appellant to the sixteen grams of methamphetamine
in the glasses case.  We overrule Appellant’s fourth and fifth issues.

V. 
Conclusion

Having
overruled Appellant’s five issues on appeal, we affirm the trial court’s
judgment.

 

 

LEE
ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT,
GARDNER, and MCCOY, JJ.

PUBLISH

DELIVERED:  January 12, 2012









[1]Amador v. State,
221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).





[2]Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).





[3]State v. Garcia-Cantu,
253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see Wiede v. State, 214
S.W.3d 17, 25 (Tex. Crim. App. 2007).





[4]State v. Kelly, 204
S.W.3d 808, 819 (Tex. Crim. App. 2006).





[5]State v. Stevens,
235 S.W.3d 736, 740 (Tex. Crim. App. 2007); Armendariz v. State, 123
S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004).





[6]Leday v. State, 983
S.W.2d 713, 718 (Tex. Crim. App. 1998).





[7]Id.





[8]See Geuder v. State,
115 S.W.3d 11, 13 (Tex. Crim. App. 2003); Martinez v. State, 98 S.W.3d
189, 193 (Tex. Crim. App. 2003) (citing Ethington v. State, 819 S.W.2d
854, 858–59 (Tex. Crim. App. 1991)); Fuentes v. State, 991 S.W.2d 267,
273 (Tex. Crim. App.), cert. denied, 528 U.S. 1026 (1999).





[9]Moraguez v. State,
701 S.W.2d 902, 904 (Tex. Crim. App. 1986).





[10]Tex. R. App. P.
33.1(a)(1); Lovill v. State, 319 S.W.3d 687, 691–92 (Tex. Crim. App.
2009).





[11]Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).





[12]Wilson v. State,
311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh’g).





[13]See Tex. R. App.
P. 38.1(i); Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim. App.
2005), cert. denied, 548 U.S. 926 (2006); Tong v. State, 25
S.W.3d 707, 710 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 1053
(2001).





[14]No. 02-06-00379-CR, 2007
WL 4216349, at *8 (Tex. App.—Fort Worth Nov. 29, 2007, no pet.) (mem. op., not
designated for publication).





[15]Everett v. State,
No. 14-01-00588-CR, 2002 WL 534124, at *2 (Tex. App.—Houston [14th Dist.] 2002,
pet. ref’d) (not designated for publication).





[16]See Roberson v. State,
No. 02-08-00152-CR, 2010 WL 3075612, at *4 (Tex. App.—Fort Worth Aug. 5, 2010,
pet. ref’d) (mem. op., not designated for publication).





[17]See Tex. R. Evid.
901.





[18]See Tex R. Evid.
801(a); Wood v. State, 299 S.W.3d 200, 214 (Tex. App.—Austin 2009, pet.
ref’d).





[19]See United States v.
Washington, 498 F.3d 225, 231 (4th Cir. 2007), cert. denied, 129 S.
Ct. 2856 (2009); Hamilton v. State, 300 S.W.3d 14, 21–22 (Tex. App.—San
Antonio 2009, pet. ref’d), cert. denied, 131 S. Ct. 2905 (2011); Miller
v. State, 208 S.W.3d 554, 563 (Tex. App.—Austin 2006, pet. ref’d); see
also Tex. R. Evid. 801(b).





[20]See Tex. R. Evid.
803(24).





[21]See Tex. R. App.
P. 44.2(b); Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).





[22]King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).





[23]Solomon, 49 S.W.3d
at 365; Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).





[24]Motilla v. State,
78 S.W.3d 352, 355 (Tex. Crim. App. 2002).





[25]Id. at 355–56.





[26]See King, 953
S.W.2d at 271.





[27]See Tex. R. App.
P. 44.2(b).





[28]See Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); Joseph v. State,
897 S.W.2d 374, 376 (Tex. Crim. App. 1995).





[29]See Poindexter,
153 S.W.3d at 405–06.